CT Corporation

**Service of Process Transmittal**
03/20/2012
CT Log Number 520171935

**TO:**   Chris Kaitson, Vice President -US Law & Deputy Gen Csl
Enbridge Energy Company, Inc.
1100 Louisiana Str., Suite 3300
Houston, TX 77002-5217

**RE:**   **Process Served in Delaware**

**FOR:**   Enbridge Energy Partners, L.P. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Curtis J. Dufour, III and Michael E. Howell, Pltfs. vs. Enbridge Energy Partners, L.P., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Proof of Service, Complaint, Verification, Exhibit(s), Motion, Application, Fiat, Subpoena Duces Tecum |
| **COURT/AGENCY:** | Forrest County Court of Chancery, MS<br>Case # 120197GNDO |
| **NATURE OF ACTION:** | Subpoena - Employment Records - Pertaining to any Employment Agreement executed by Curtis J. Dufour, III and/or Michael E. Howell (See Exhibit for additional requests) and a Complaint concerning employment litigation - Seeking declaratory and injunctive relief and a temporary restraining order and Fiat |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/20/2012 at 12:30 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | On or before the date set forth in the Court's Fiat (Multiple dates listed: March 21, 2012 at 9:00 a.m. - Hearing // March 27, 2012 at 1:30 p.m. - Hearing) - Production // March 21, 2012 at 9:00 a.m. - Hearing // March 27, 2012 at 1:30 p.m. - Hearing // Within 30 days from the date of delivery - Response |
| **ATTORNEY(S) / SENDER(S):** | David M. Ott<br>Bryan Nelson P.A.<br>P.O. Drawer 18109<br>Hattiesburg, MS 39404-8109<br>601-261-4100 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/20/2012, Expected Purge Date: 03/30/2012<br>Telephone, Chris Kaitson , 713-650-8900<br>Image SOP<br>Email Notification, Christelle Taylor christelle.taylor@enbridge.com<br>Email Notification, Chris Kaitson chris.kaitson@enbridge.com<br>Email Notification, Wendy Lee wendy.lee@enbridge.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | The Corporation Trust Company<br>Scott LaScala<br>1209 Orange Street<br>Wilmington, DE 19801<br>302-658-7581 |



**EXHIBIT**

*exhibitsticker*

**1**

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

## IN THE CHANCERY COURT OF FORREST COUNTY, MISSISSIPPI

**CURTIS J. DUFOUR, III AND**
**MICHAEL E. HOWELL**                                                    **PLAINTIFFS**

**VS.**                                    CIVIL ACTION NO. _12-0197-GN-DO_

**ENBRIDGE ENERGY PARTNERS, L.P.**                              **DEFENDANT**

### SUMMONS

TO:    Enbridge Energy Partners, L.P.
       c/o Registered Agent, The Corporate Trust Company
       Corporate Trust Center
       1209 Orange Street
       Wilmington, Delaware 19801

### NOTICE TO DEFENDANT

THE COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, APPLICATION FOR FIAT AND FIAT WHICH ARE ATTACHED TO THIS SUMMONS ARE IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand-deliver a copy of a written response to the Complaint for Declaratory and Injunctive Relief to DAVID M. OTT AND WILLIAM A. WHITEHEAD, JR., the attorneys for the Plaintiffs, whose address is **POST OFFICE DRAWER 18109, Hattiesburg, MS, 39404-8109**. A response to the Complaint for Declaratory and Injunctive Relief must be mailed or delivered within (30) days from the date of delivery of this Summons and Complaint for Declaratory and Injunctive Relief or a judgment by default will be entered against you for the money or other things demanded in the Complaint for Declaratory and Injunctive Relief. You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, this the _15_ day of March, 2012.

Jimmy C. Havard
FORREST COUNTY CHANCERY CLERK

BY: _Sandra Daniels_ D.C.

Issued at the Request of:
David M. Ott, MS Bar No. 3948
William A. Whitehead, Jr., MSB No. 10152
BRYAN NELSON P.A.
Post Office Drawer 18109
Hattiesburg, Mississippi 39404-8109
Phone: (601) 261-4100
Facsimile: (601) 261-4106

244858.docx

# IN THE CHANCERY COURT OF FORREST COUNTY, MISSISSIPPI

**CURTIS J. DUFOUR, III AND**
**MICHAEL E. HOWELL**                                                    **PLAINTIFFS**

MAR 15 2012

**VS.**                                   CIVIL ACTION NO. 12-0197-GN-D

                                          _Jimmy C Hood_

**ENBRIDGE ENERGY PARTNERS, L.P.** Chancery Clerk                  **DEFENDANT**

## MOTION FOR TEMPORARY RESTRAINING
## ORDER AND PRELIMINARY INJUNCTION

COME NOW, Plaintiffs, Curtis J. Dufour, III, and Michael E. Howell, and file this their

Motion for Temporary Restraining Order and Preliminary Injunction as to Defendant, Enbridge

Energy Partners, L.P., pursuant to Rule 65 of the Mississippi Rules of Civil Procedure. In support

of this Motion, Plaintiffs would show unto this Honorable Court the following:

1.    On or about March 11, 1999, Midcoast Energy Resources, Inc. entered into an

"Agreement and Plan of Merger with Respect to Dufour Petroleum, Inc. and Purchase Agreement

Pertaining to Remaining Flare, LLC Membership Interest" (hereinafter "Merger Agreement") with

Dufour and Howell, among others.  A true and correct copy of relevant portions of the Merger

Agreement is attached hereto as Exhibit "1" with redactions of any confidential information.  The

agreement provided in Section 11 on Page 54-5 as follows:

> 11.    <u>Prohibited Activities of the DPI Shareholders and Michael E. Howell</u>.  In
> order to protect the goodwill and business interests of DPI and Flare following the
> Closing, the DPI Shareholders and Michael E. Howell covenant and agree that they
> will not:
>
>       (a)    directly or indirectly, for a period of five (5) years from the Closing
> Date, request or advise any party to any contracts of commitments, now or hereafter
> existing, with DPI, Magnolia or Flare, or their respective successors, to withdraw,
> curtail or cancel any service to or from such parties under the terms of such contract
> or commitment;
>
>       (b)    for a period of five (5) years from the Closing Date, aid, abet or
> otherwise assist any person, firm or corporation seeking to interfere with DPI's and

Flare's or their successors' relationship with the parties to, or the term of, any contract, now or hereafter existing, with it; or

(c)   acting alone or in conjunction with others, directly or indirectly, in Mississippi, Alabama, Louisiana, and Texas, for a period of five (5) years from the Closing Date, engage in any businesses in competition with the respective businesses presently conducted by DPI and Flare or their successors, whether for their own account or for others.

It is recognized that Curtis J. Dufour, III owns an interest in Maurice Gas Processing Co. (through DPI Gas Marketing and Gathering Co.) and El Mesquite Plant, LC, two (2) companies that own natural gas processing plants. Notwithstanding anything herein to the contrary, it is agreed that the covenants contained in Section 11(a), (b), and (c) shall not pertain to Curtis J. Dufour, III's ownership interest in Maurice Gas Processing Co. and El Mesquite Plant, LC and the business of those entities.

*See,* Exhibit "1".

2.      At or about the same time as the Merger Agreement was entered into, Plaintiffs also entered into an agreement with the surviving entity of the Merger Agreement, DPI/Midcoast, Inc., providing for the terms of Plaintiffs' employment. A true and correct copy of the Employment Agreement entered into by Dufour is attached as Exhibit "2" and the Employment Agreement entered into by Howell is attached as Exhibit "3".

3.      The Employment Agreements provided, both with respect to Dufour and Howell, as follows regarding the term of employment under this agreement:

**Section 4: Term of Employment.** For purposes of this Agreement, Employee's term of employment shall commence on the Effective Date hereof and shall terminate on the third anniversary of such date ("Primary Term"), unless earlier terminated in accordance with Section 6 hereof.

*See,* Exhibits "2" and "3".

4.      The Employment Agreements entered into between DPI/Midcoast, Inc., and both Dufour and Howell further contain a provision with regard to, "Non-Disclosure of Confidential Information." *See,* Exhibits "2" and "3". Specifically, Section 7 of the Agreements provide that the

prohibition of disclosure of confidential information, "shall survive any termination or expiration of the Agreement." *Id.*

5.     Sections 8 and 9 of the Employment Agreements concern a prohibition from solicitation of customers and covenants not to compete. Specifically, these sections contain no provision that any such prohibitions regarding those undertakings survived termination or expiration of the agreement. *Id.*

6.     Under Section 11 of the Dufour and Howell Employment Agreements, subparagraph G, the terms of the agreement expressly and unambiguously provide that neither party "may assign any or all of such Party's rights or obligations hereunder without prior written consent of the other Party hereto, except that Employer may assign to a subsidiary thereof without the consent of Employee." *Id.*

7.     Sometime after three (3) years from March 11, 1999, Enbridge purchased DPI/Midcoast, Inc. Upon information and belief the purchase date was sometime in May of 2002.

8.     At the time of Enbridge's purchase of DPI/Midcoast, Inc., the Employment Agreements of both Dufour and Howell had terminated and/or expired pursuant to Section 4 of the agreements. Under the terms of Section 4, the term of employment under the agreement commenced on the effective date of March 11, 1999 and terminated on the third anniversary of that date or March 11, 2002. Accordingly, Plaintiffs' employment under the employment agreement had terminated and/or expired at the time Enbridge purchased DPI/Midcoast, Inc. Furthermore, the agreement itself prohibits assignment without the consent of the other party and no such consent was given by Plaintiffs. There have been no renewals of either of the Employment Agreements. Additionally, Plaintiffs have not given consent or their agreement to any assignment of any rights or

obligations arising pursuant to the Employment Agreements entered into with DPI/Midcoast, Inc., to Enbridge.

9.    The Employment Agreements further provide for certain rights to Dufour and Howell upon a change of control of DPI/Midcoast, Inc. which rights are clearly designed to prevent enforcement of the non-compete or non-solicitation provisions of the Employment Agreements upon change of control of DPI/Midcoast, Inc. which did occur with the Enbridge purchase. *See*, Section 6 F and Section 10 of the agreements attached as Exhibits "2" and "3" to this Complaint.

10.    In summary, Enbridge was not a party to either the Merger Agreement or the Employment Agreements. As a stranger to the Employment Agreements, Enbridge has no legal right or legal interest to enforce the Employment Agreements. Endrige never received any rights under the employment agreement between DPI/Midcoast, Inc. and Dufour and Howell, since any such rights could not be assigned as provided by the express and unambiguous terms of the Agreements. Further, none of the rights under the agreement granted to DPI/Midcoast, Inc. regarding non-compete or non-solicitation survive beyond five (5) years from the date the Agreements were executed. The Merger Agreement (Exhibit "1" to the Complaint) sets out the five (5) year non-compete which is identical to the three (3) year term of the Employment Agreement plus a two (2) year non-compete for the same five (5) year period.

11.    On or about December 9, 2011, the employment of Dufour and Howell with Enbridge ended.

12.    On or about March 7, 2012, Chris Kaitson, Vice President-U.S. Law & Deputy General Counsel of Enbridge Energy Company, wrote letters to both Dufour and Howell threatening to institute litigation against both Dufour and Howell in the event they did not comply with the provisions of the employment agreement referenced above and attached as Exhibits "2" and "3" to

this Complaint. True and correct copies of these letters with the attachments received by Dufour and Howell are attached as Exhibits "4" and "5", respectively.

13.     Both Dufour and Howell have for decades operated in the energy business in many capacities as brokers, buyers, sellers, transporters and in other ways in the oil, gas, condensate, storage and transportation industry. The enforcement of any noncompetition provision contained in Agreements to which Enbridge was not even a party, to which Enbridge has not acquired any rights, and which have terminated and expired by their own terms against Dufour and Howell would render them unable to be gainfully employed. In addition to the facts outlined above which render the agreement completely unenforceable by Enbridge, the terms of the agreement itself are overly broad and unenforceable.

## REQUEST FOR INJUNCTIVE RELIEF

14.     Based on the foregoing, Plaintiffs request that this court enter a Temporary Restraining Order and Preliminary Injunction to enjoin Enbridge Energy Partners, L.P. and those acting in concert and privity with them as provided for by Rule 65 of the Mississippi Rules of Civil Procedure from enforcing or seeking to enforce the employment agreements attached as Exhibits "2" and "3" to this Complaint, or taking actions or steps as outlined by the letter of Mr. Chris Kaitson to seek to enforce such agreements. In support of this request for entry of a Temporary Restraining Order and Preliminary Injunction, Dufour and Howell would show this Honorable Court as follows:

a.     This request for injunctive relief is necessary in order to prevent irreparable harm to Plaintiffs, who without the injunctive relief would be subject to litigation instituted by Enbridge seeking to enforce an agreement in which it has no legal rights and that has terminated/expired by its own express and unambiguous terms, likely filed in a foreign court;

---

b.       Issuance of an injunction against Defendant seeking to enforce these agreements against Plaintiffs would not cause any undue prejudice to Defendant and furthermore such an injunction would not be against public policy as employment agreements restricting employment opportunities of plaintiffs are disfavored under the law. Furthermore, issuance of an injunction and protection of Plaintiffs from actions threatened by Defendant would be in furtherance of public policy favoring unrestricted employment and business opportunities of citizens of this State and disfavoring restrictions on such opportunities;

c.       This Court has a local interest in resolution of this dispute in that both Plaintiffs are and have been citizens of Forrest and Lamar Counties, in Mississippi and restrictions on their business and employment opportunities adversely affect the economy of our community. Because the expired and unenforceable agreement on which Defendant relies contains a forum selection clause that is also not enforceable, the Defendant is likely to seek review of the agreement in a foreign forum which would be unfairly prejudicial to Defendants; and

d.       While Plaintiffs contend that any security or bond that might be required should be minimal, they stand ready to post a reasonable bond if the Court deems it is necessary and in the interest of justice to do so.

15.      Plaintiffs have no adequate remedy at law to prevent Defendant's wrongful conduct seeking to enforce an agreement to limit their ability to earn a living under which Defendant has no rights.

16.      The acts of Defendant have caused and continue to cause damage to Plaintiffs in that Plaintiffs are precluded from engaging in business and employment opportunities in order to support themselves and their families.

17.     There exists a substantial likelihood that Plaintiffs will prevail on the merits of this matter because Defendant is a complete stranger to the contracts that Defendant threatens to enforce against Plaintiffs, the contracts have expired, the claims of the Plaintiffs are clear and the requested relief is narrowly tailored to protect a legitimate business interest of Plaintiffs to be able to make a living.

18.     A Temporary Restraining Order and Preliminary Injunction is necessary to prevent irreparable harm to Plaintiffs, and the threatened injury to Plaintiffs outweighs the harm a Temporary Restraining Order and Preliminary Injunction might do to Defendant.

19.     The entry of a Temporary Restraining Order and Preliminary Injunction by this Court is consistent with the public interest.

20.     Plaintiffs request this Court to issue a Temporary Restraining Order and Preliminary Injunction against Defendant, enjoining them and those in privity, active concert or participation with Defendant from:

a.      Enforcing or seeking to enforce the Employment Agreements attached as Exhibits "2" and "3" to the Complaint, or taking actions or steps as outlined by the letter of Mr. Chris Kaitson to seek to enforce such agreements to include the initiation of other litigation against Plaintiffs in a forum other than this Court; and

b.      Plaintiffs' request for injective relief is necessary in order to prevent irreparable harm to Plaintiffs, who without the injunctive relief would be subject to litigation instituted by Enbridge seeking to enforce an agreement in which it has no legal rights and that has terminated/expired by its own express and unambiguous terms, likely filed in a foreign court.

WHEREFORE, on the basis of the foregoing, Plaintiffs respectfully request that this Court issue a Temporary Restraining Order pursuant to Rule 65 of the Mississippi Rules of Civil

Procedure and that a evidentiary hearing on Plaintiffs' request for a Preliminary Injunction be scheduled with the Court within ten (10) days of the issuance of the Temporary Restraining Order and that the appropriate injunctions be entered by the Court.  Plaintiffs further seek any additional relief to which they may be entitled.

This the 15 day of March, 2012.

Respectfully submitted,

**CURTIS J. DUFOUR, III AND
MICHAEL E. HOWELL, PLAINTIFFS**

David M. Ott, MS Bar No. 3948
William A. Whitehead, Jr., MS Bar No. 10152

BRYAN NELSON P.A.
Post Office Drawer 18109
Hattiesburg, Mississippi 39404
T: (601) 261-4100
F:  (601) 261-4106
Web:  www.bnlawfirm.com

AGREEMENT AND PLAN OF MERGER

WITH RESPECT TO

DUFOUR PETROLEUM, INC.

AND

PURCHASE AGREEMENT PERTAINING TO

REMAINING FLARE, LLC MEMBERSHIP INTERESTS

1



EXHIBIT

1

AGREEMENT AND PLAN OF MERGER
WITH RESPECT TO
DUFOUR PETROLEUM, INC.
AND
PURCHASE AGREEMENT PERTAINING TO
REMAINING FLARE, L.L.C. MEMBERSHIP INTERESTS

THIS AGREEMENT AND PLAN OF MERGER WITH RESPECT TO DUFOUR PETROLEUM, INC. AND PURCHASE AGREEMENT PERTAINING TO REMAINING FLARE, L.L.C. MEMBERSHIP INTERESTS (this "Agreement") dated as of March 11, 1999, is made by and among the following parties (hereinafter collectively referred to as the "Parties" and individually as a "Party"): Midcoast Energy Resources, Inc., a Nevada corporation ("Midcoast"); Magnolia Resources, Inc., a Mississippi corporation ("Magnolia); DPI/Midcoast, Inc., a Mississippi corporation ("DPI/Midcoast"); Dufour Petroleum, Inc., a Mississippi corporation ("DPI"); Curtis J. Dufour, III, and wife, Donna M. Dufour (collectively, the "DPI Shareholders"); James D. Laughlin, Michael E. Howell, Greg A. Haeusler, Greg L. Robbins, Deway Greene, Ronald R. Lubritz, and David I. Hirsch (collectively, the "Flare Minority Owners").

## W I T N E S S E T H:

WHEREAS, Dufour Petroleum, Inc. is taxed as a "C" corporation and all of its issued and outstanding shares of capital stock are owned fifty percent (50%) by Curtis Dufour, III and fifty percent (50%) by Donna M. Dufour; Dufour Petroleum, Inc. owns eighty percent (80%) of all of the issued and outstanding membership interests of Flare, L.L.C. ("Flare"), which is a Mississippi limited liability company taxed as a partnership; and the Flare Minority Owners collectively own the remaining twenty percent (20%) of all of the issued and outstanding membership interests of Flare, as follows: James D. Laughlin, five percent (5%); Michael E. Howell, three percent (3%); Greg A. Haeusler, two percent (2%); Greg L. Robbins, two and one-half percent (2.5%); Deway Greene, two and one-half percent (2.5%); Ronald R. Lubritz, two and one-half percent (2.5%); and David I. Hirsch, two and one-half percent (2.5%); and

WHEREAS, the DPI Shareholders desire to merge DPI with and into DPI/Midcoast, a wholly-owned subsidiary of Midcoast with DPI/Midcoast as the surviving corporation of the

2

respect to Tax matters pertinent to DPI and Flare relating to any taxable period beginning before the Effective Date until the expiration of the statute of limitations (and, to the extent notified by the DPI Shareholders or the Flare Minority Owners, any extensions thereof) of the respective taxable periods, and to abide by all record retention agreements entered into with any taxing authority, and (ii) give the DPI Shareholders and the Flare Minority Owners reasonable written notice prior to transferring, destroying or discarding any such books and records and, if they so request, shall allow them to take possession of such books and records.

(e) Certain Taxes. All transfer, documentary, sales, use, stamp, registration and other such Taxes and fees (including any penalties and interest) imposed by any state which are incurred in connection with this Agreement, shall be paid by the DPI Shareholders and the Flare Minority Owners, as applicable, when due, and they will, at their own expense, file all necessary Tax Returns and other documentation with respect to all such transfer, documentary, sales, use, stamp, registration and other Taxes and fees, and, if required by applicable law, they will, and will cause their Affiliates to, join in the execution of any such Tax Returns and other documentation.

11. Prohibited Activities of the DPI Shareholders and Michael E. Howell. In order to protect the goodwill and business interests of DPI and Flare following the Closing, the DPI Shareholders and Michael E. Howell covenant and agree that they will not:

(a) directly or indirectly, for a period of five (5) years from the Closing Date, request or advise any party to any contracts or commitments, now or hereafter existing, with DPI, Magnolia or Flare, or their repsective successors, to withdraw, curtail or cancel any service to or from such parties under the terms of such contract or commitment;

(b) for a period of five (5) years from the Closing Date, aid, abet or otherwise assist any person, firm or corporation seeking to interfere with DPI's and Flare's or their successors'relationship with the parties to, or the term of, any contract, now or hereafter existing, with it; or

(c) acting alone or in conjunction with others,

54

directly or indirectly, in Mississippi, Alabama, Louisiana, and Texas, for a period of five (5) years from the Closing Date, engage in any businesses in competition with the respective businesses presently conducted by DPI and Flare or their successors, whether for their own account or for others.

It is recognized that Curtis J. Dufour, III owns an interest in Maurice Gas Processing Co. (through DPI Gas Marketing and Gathering Co.) and El Mesquite Plant, LC, two (2) companies that own natural gas processing plants. Notwithstanding anything herein to the contrary, it is agreed that the covenants contained in Section 11(a), (b), and (c) shall not pertain to Curtis J. Dufour, III's ownership interest in Maurice Gas Processing Co. and El Mesquite Plant, LC and the business of those entities.

12.  <u>Mediation and Arbitration</u>. The Parties acknowledge and agree that any dispute, controversy or claim of any kind or nature which may arise between the Parties, including any dispute, controversy or claim of any kind or nature which may arise between the Parties with respect to this Agreement or the transactions contemplated hereby (including any dispute, controversy or claim relating to the validity of this dispute resolution clause) shall be settled by alternative dispute resolution if said dispute cannot be settled through negotiation between the Parties.  The Parties agree first to try in good faith to settle each dispute by mediation in Houston, Harris County, Texas.  The mediation shall be conducted by a professional mediator who is a licensed attorney in the state of Texas, who is mutually agreeable to the Parties, and who is not affiliated, directly or indirectly, with any of the Parties. If the Parties are unable to agree on a mediator, then the mediator shall be selected under the rules of the American Arbitration Association.   If mediation is unsuccessful at resolving the dispute between the Parties, the dispute shall be finally settled by binding arbitration as provided below.

The Parties acknowledge and agree that this Agreement and the performance of the transactions contemplated hereby evidence transactions contemplated hereby which involve a substantial nexus with interstate commerce.  Accordingly, any dispute, controversy or claim of any kind or nature which may arise between the Parties (including any dispute, controversy or claim relating to the validity of this arbitration clause) with respect to this Agreement or the

only and shall not be construed to describe, define or limit the scope or intent of the provisions of this Agreement.

(q) <u>Entire Agreement</u>. This Agreement (including the documents referred to herein) constitutes the entire agreement among the Parties and supersedes any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they have related in any way to the subject matter hereof.   There are no contemporaneous agreements, oral or written, by or among the Parties regarding the subject matter hereof.

(r) <u>Additional Documents</u>. The Parties to this Agreement shall cause to be delivered on the Closing Date, or at such other times and places as shall be agreed upon, such additional documents as a Party may reasonably require for the purpose of carrying out this Agreement.   The Parties shall exert best efforts in coordinating such requests, and shall direct officers, directors, employees and representatives to furnish information, evidence, testimony, and other assistance in connection with resolution of any disputes arising from this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement in multiple counterpart originals as of the date first above written.

(Signature pages follow.)

"MIDCOAST":

MIDCOAST ENERGY RESOURCES, INC.

By: _Dan C. Tutcher_
    Dan C. Tutcher,
    President

"MAGNOLIA"
MAGNOLIA RESOURCES, INC.

By: _Dan C. Tutcher_
    Dan C. Tutcher,
    President

"DPI/MIDCOAST"

DPI/MIDCOAST, INC.

By: _Dan C. Tutcher_
    Dan C. Tutcher,
    ~~President~~
    Chairman

"DPI":

DUFOUR PETROLEUM, INC.

By: _____
    Curtis J. Dufour, III,
    President

"DPI SHAREHOLDERS":

_____
CURTIS J. DUFOUR III

_____
DONNA M. DUFOUR

"FLARE MINORITY OWNERS:"

_____
JAMES DREW LAUGHLIN

_____
MICHAEL E. HOWELL

_____
GREG A. HAEUSLER

_____
GREG L. ROBBINS

_____
DEWAY GREENA

_____
RONALD L. LUBRITZ

_____
DAVID I. HIRSCH

1

## EMPLOYMENT AGREEMENT

This Employment Agreement, effective as of the 11th day of March 1999, (the "Effective Date"), is by and between DPI/Midcoast Inc. ("Employer" or "DPI/Midcoast") and **Curtis J. Dufour, III** ("Employee"). Employer and Employee are herein sometimes referred to individually as "Party" and jointly as the "Parties". Midcoast Energy Resources, Inc. ("Midcoast") joins herein for the limited purposes of agreeing to the provisions of Section 10 of this Agreement.

### Section 1: Employment and Scope of Service.

A. For and in consideration of the agreements set forth herein, Employer hereby employs Employee, and Employee hereby accepts employment from Employer as Chief Executive Officer of Employer. Employee hereby agrees to perform the services required of him in such capacity in good faith and with reasonable diligence, such duties being those reasonable and customary duties that are from time to time established, designated and communicated to Employee by the Board of Directors of Employer.

B. Employer shall, at Employer's sole cost and expense, provide Employee at Employer's principal place of business in Petal, MS reasonable office space and facilities including an office, supplies, and reasonable secretarial and administrative assistance consistent with Employee's position.

**Section 2: Place of Employment.** Employee's duties under this Agreement shall be performed principally and primarily at Employer's place of business in Petal ,Mississippi , and incidentally and secondarily at such other place or places to which Employer, from time to time, may reasonably request Employee to travel (at Employer's sole cost and expense) in connection with Employee's duties hereunder.

**Section 3: Time Devoted Business.** Employee shall give best efforts and endeavors to the discharge of his duties and responsibilities hereunder. Employee shall devote his full business time and attention to Employer's business; provided, however, that Employee may devote reasonable amounts of time to personal, outside businesses that do not compete with Employer, charitable, and professional activities so long as such activities do not materially interfere with the performance of Employee's duties hereunder. Employee's business activities with Maurice Gas Processing Co. and El Mesquite Plant, LC are excepted from the application of this paragraph.

**Section 4: Term of Employment.** For purposes of this Agreement, Employee's term of employment shall commence on the Effective Date hereof and shall terminate on the third anniversary of such date ("Primary Term"), unless earlier terminated in accordance with Section 6 hereof.

**Section 5: Compensation.** In consideration of the services to be performed hereunder, Employer agrees to pay or cause to be paid to Employee, and Employee agrees to accept, the following:

A. Base Salary. For all services rendered under this Agreement, beginning on the Effective Date, the Employer agrees to pay the Employee during the Employment Period an annual minimum salary ("Salary") in the amount of One Hundred Twenty-Five Thousand Dollars ($125,000) per year, payable in equal semi-monthly installments, or the equivalent amount payable on any other periodic basis consistent



with the Employer's payroll procedures. Employee's base salary shall increase each year in an amount commensurate with other Midcoast Energy Resources, Inc.'s (hereinafter "Midcoast") subsidiaries' employees' with responsibilities comparable to Employee's responsibilities, which is anticipated to be a minimum of five percent (5%). Employer shall make appropriate deductions from Employee's salary for customary withholding taxes and other employment taxes as required for salaried compensation under Federal, State and local tax laws. Employee's Salary shall be in addition to any bonuses (in cash or stock) that may be given from time to time at the discretion of Employer.

B.    Other Benefits.   Employee shall be entitled to vacation pay in accordance with Employer's written corporate policy which policy shall be identical to Midcoast's corporate policy.  In addition, Employee shall be entitled to such holidays and sick leave as well as other benefits, including fringe benefits, provided to employees of other Midcoast subsidiaries with responsibilities comparable to Employee's responsibilities and other benefits as may be agreed to by the Parties.

C.    Automobile.  Employer shall provide Employee with the use of an Employer owned automobile in connection with Employee's performance of his services for Employer under this Agreement.

D.    Miscellaneous Expenses.   Employer shall promptly reimburse Employee for all reasonable and necessary expenses incurred or paid by Employee incident to Employee's employment under this Agreement, including without limitation reasonable business entertainment and other reasonable and necessary expenses directly associated with Employee's responsibilities.

## Section 6: Termination of Employment.

A.    Mutual Agreement.  Either Party may terminate this Agreement at any time when Employer and Employee shall mutually agree in writing.

B.    Default.  This Agreement may, at Employer's option, be terminated for Cause.  For purposes of this Agreement, Cause shall exist if (i) Employee defaults in the performance of his duties and fails to cure such default within ten (10) days after written notice thereof has been delivered to Employee, or (ii) Employee commits any act of fraud or malfeasance bearing on Employee's performance of his duties hereunder, or affecting the good name or reputation of the Employer or Midcoast or its subsidiaries.

C.    Disability.  This Agreement may likewise be terminated at Employer's option in the event Employee becomes Disabled.  For the purposes this Agreement, "Disabled" shall mean an illness or injury that renders Employee unable to reasonably perform his essential functions for a continuous period of six (6) months or longer; provided, however, that Employer shall make reasonable and necessary accommodations to enable Employee to perform such functions.  During any period of disability prior to termination of this Agreement, Employee shall be paid his regular compensation as defined herein above; and provided, further, that Employer's payments of such compensation shall be directly reduced by any amounts actually paid to Employee

2

pursuant to any disability insurance policy purchased by Employer.

D.     Death. This Agreement shall automatically terminate upon Employee's death.

E.     Payment of Compensation.  In the event this Agreement is terminated pursuant to
       Sections 6C. or 6D., the full amount of compensation remaining to be paid during the
       Primary Term of this Agreement shall be paid to Employee or to his surviving heirs, as
       determined at law or according to his Last Will and Testament, as applicable, in a lump
       sum discounted to reflect the current value of all future payments due hereunder at a
       discount rate of twelve percent (12%).

F.     Change of Control. This Agreement may be terminated at Employer's option upon a
       Change of Control of Midcoast.  As used herein and in Section 10 of the Agreement,
       "Change of Control" means (i) the sale of all or substantially all of the assets of
       Midcoast to any person (other than a wholly-owned subsidiary of Midcoast) or related
       group (as that term is used in Section 13(d)(3) of the Securities Exchange Act of 1934)
       of persons (other than a wholly-owned subsidiary of Midcoast) as an entirety or
       substantially as an entirety in one transaction or series of related transactions, or (ii) the
       first day on which a majority of the members of the board of directors of Midcoast are
       not continuing directors or (iii) the acquisition by any person or group or persons (other
       than a wholly-owned subsidiary of Midcoast) of more than fifty percent (50%) of the
       total voting power entitled to vote generally in the election of the directors of Midcoast,
       other than by a public offering or private placement of the shares, or (iv) the liquidation
       or dissolution of Midcoast.  In the event Employee elects to terminate his employment
       under this provision, Employee shall receive a lump sum payment equal to fifty percent
       (50%) of Employee's then current annual salary upon written notice of such election,
       which notice must be provided within 30 days of Employee's knowledge of such
       Change of Control.

Section 7: Non-Disclosure of Confidential Information. During the continuation of his employment hereunder, and at all times thereafter, Employee shall keep with absolute secrecy and shall not reveal, disclose, or publish to any person or entity other than the President of Employer, or otherwise utilize (other than for the proper performance of Employee's duties) any information of confidential or secret nature (including, without limitation, all trade secrets, designs inventions, computer software or other electronic data, financial information, customer lists and business prospects) concerning the specific affairs of the Employer or any person or entity owned by or owning, whole or in part, the Employer ("Confidential Information").  Upon termination of Employee's full time employment with Employer, Employee shall surrender to Employer all papers, documents, writings, computer disks, electronic information and other property produced by him or coming into his possession by or through the rendering of his services to Employer and relating to the Confidential Information, and Employee agrees that all such materials shall at all times remain the property of Employer.  The provisions of this Section shall survive any termination or expiration of the Agreement.

Section 8:   Solicitation of Customers.  Unless waived in writing by Employer, Employee further agrees that he will not, directly or indirectly, during the course of employment and for two (2) years thereafter contact either voluntarily or involuntarily, or for any reason whatsoever, solicit the trade or patronage of any of Employer's existing customers or prospective customers with whom Employer is negotiating, regardless of the location of such customers or prospective customers of the Employer

3

throughout the United States.

**Section 9:** **Covenant Not To Compete.**    For a period of two (2) years from the date of any termination of Employee's employment with the Employer, Employee shall not (i) accept employment with or render any services to or form an association with any business directly competitive with the Employer in the areas where it is doing business,  nor  engage in the marketing and transportation of liquified petroleum gases, including carbon dioxide, within the immediate georgraphic areas where employer is conducting such business and/or with the then existing customers with which such employer is doing business; and/or within the areas or with prospective customers that employee is involved in the evaluation of or the development of at the time of employee's termination, or (ii) employ or offer to employ, in a professional capacity in any business directly competitive with the Employer, in the areas where it is doing business, anyone who is or has been a director, officer, shareholder, or employee of the Employer. Employee acknowledges that the restrictions imposed by this Agreement are fully understood and will not preclude Employee from becoming gainfully employed following a termination of employment with the Employer.

**Section 10:** **Automatic Release of Covenants.** Notwithstanding anything herein to the contrary, the provisions of paragraphs 8 and 9 hereof and the provisions of Section 11 of that certain "Agreement and Plan of Merger with respect to Dufour Petroleum, Inc and Purchase Agreement pertaining to remaining Flare LLC Membership Interests" dated March 11, 1999, as said provisions apply to Employee, shall be terminated and held for naught: (a) upon a Change of Control of Midcoast and Employee's involuntarily termination by Employer prior to the expiration of the Primary Term; or (b) Employer's material breach of this Agreement and its failure to remedy or cure such material breach within ten (10) days after written notice of such material breach has been delivered by Employee to Employer.

**Section 11:** **General Provisions.**

    A.    Notices. Any notice or other communications given or made under or pursuant to this Agreement shall be given in writing, shall be effective on receipt, and may be delivered to the relevant Party or sent by first class, postage prepaid, at the following address or such other address as any Party may hereafter designate by written notice:

        Employer:                    Employee:
        DPI/MIDCOAST, INC.         Curtis J. Dufour, III
        Attention:  Chairman of the Board   100 W. Canebreak
        1100 Louisiana, Suite 2950      Hattiesburg, Mississippi 39404
        Houston, TX 77002

    B.    Other Agreements.  This Agreement, constitutes the entire agreement of the Parties hereto, expressly superseding all prior understandings, commitments, and agreements other than those expressly referred to in this Agreement, whether written or oral between Employer or its subsidiaries or predecessors and Employee.

    C.    Governing Law. This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas. The Parties agree that the District Court of Harris County, Texas, or the United

States District Court of the Southern District of Texas, Houston Division, is the appropriate forum regarding any dispute relating to this Agreement.

D.  No Waiver. The failure of either Party to insist in one or more instances on the performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of any right granted hereunder or of the future performance of any such term, covenant, or condition.

E.  Severability. If any provision of this Agreement shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby.

F.  Headings. Any headings or titles of sections or paragraphs are for convenience only and shall not limit nor amplify the provisions of this Agreement.

G.  Binding Agreement. This Agreement shall inure to the benefit of and be binding on the undersigned Parties and their respective heirs, executors, successors, and assigns. Neither Party hereto may assign any or all of such Party's rights or obligations hereunder without prior written consent of the other Party hereto, except that Employer may assign to a subsidiary thereof without the consent of Employee.

IN WITNESS HEREOF, the Parties hereto have executed this Agreement, effective as of the Effective Date first set forth above.

**EMPLOYER:**
DPI/MIDCOAST, INC.

By: _____
Name: Dan C. Tutcher
Title: President/Chairman

**EMPLOYEE:**

_____
CURTIS J. DUFOUR, III

MIDCOAST ENERGY RESOURCES, INC.

By: _____
Dan C. Tutcher
President

5

## EMPLOYMENT AGREEMENT

This Employment Agreement, effective as of the 11th day of March 1999; (the "Effective Date"), is by and between DPI/Midcoast, Inc. ("Employer" or "Midcoast") and Mike Howell ("Employee"). Employer and Employee are herein sometimes referred to individually as "Party" and jointly as "Parties".

### Section 1: Employment and Scope of Service.

A.  For and in consideration of the agreements set forth herein, Employer hereby employs Employee, and Employee hereby accepts employment from Employer as President of Employer. Employee hereby agrees to perform the services required of him in such capacity in good faith and with reasonable diligence, such duties being those reasonable and customary duties that are from time to time established, designated and communicated to Employee by the Board of Directors of Employer.

B.  Employer shall, at Employer's sole cost and expense, provide Employee at Employer's principal place of business reasonable office space and facilities including an office, supplies, and reasonable secretarial and administrative assistance consistent with Employee's position.

**Section 2: Place of Employment.** Employee's duties under this Agreement shall be performed principally and primarily at Employer's place of business in Petal, Mississippi, and incidentally and secondarily at such other place or places to which Employer, from time to time, may reasonably request Employee to travel (at Employer's sole cost and expense) in connection with Employee's duties hereunder.

**Section 3: Time Devoted Business.** Employee shall give best efforts and endeavors to the discharge of his duties and responsibilities hereunder. Employee shall devote his full business time and attention to Employer's business; provided, however, that Employee may devote reasonable amounts of time to personal, outside businesses that do not compete with Employer, charitable, and professional activities so long as such activities do not materially interfere with the performance of Employee's duties hereunder.

**Section 4: Term of Employment.** For purposes of this Agreement, Employee's term of employment shall commence on the Effective Date hereof and shall terminate on the third anniversary of such date ("Primary Term"), unless earlier terminated in accordance with Section 6 hereof.

**Section 5: Compensation.** In consideration of the services to be performed hereunder, Employer agrees to pay or cause to be paid to Employee, and Employee agrees to accept, the following:

A.  Base Salary. For all services rendered under this Agreement, beginning on the Effective Date, the Employer agrees to pay the Employee during the Employment Period an annual minimum salary ("Salary") in the amount of Ninety Thousand Dollars ($90,000) per year, payable in equal semi-monthly installments, or the equivalent amount payable on any other periodic basis consistent with the Employer's payroll procedures (but no less frequently than monthly). Employee's base salary shall increase each year in an amount commensurate with other Midcoast Energy Resources, Inc.'s



(hereinafter "Midcoast") subsidiaries' employees' with responsibilities comparable to Employee's responsibilities, which is anticipated to be a minimum of five percent (5%). Employer shall make appropriate deductions from Employee's salary for customary withholding taxes and other employment taxes as required for salaried compensation under Federal, State and local tax laws. Employee's Salary shall be in addition to any bonuses (in cash or stock) that may be given from time to time at the discretion of Employer.

B.    Stock Options.  Subject to this Agreement, Employee is granted the option to purchase Twelve Thousand Five Hundred shares of the Common Stock of Midcoast Energy Resources, Inc. for a period of 10 years from the Effective Date at an exercise price equal to the closing price of shares as listed on the American Stock Exchange on the Effective Date of this Agreement, vesting as follows:

| | |
|---|---|
| At the end of the 1st year: | 2,500 shares shall have vested; |
| At the end of the 2nd year: | an additional 2,500 shares shall have vested; |
| At the end of the 3rd year: | an additional 2,500 shares shall have vested; |
| At the end of the 4th year: | an additional 2,500 shares shall have vested; |
| At the end of the 5th year: | an additional 2,500 shares shall have vested; |

C.    Other Benefits.  Employee shall be entitled to vacation pay in accordance with Employer's written corporate policy which policy shall be identical to Midcoast's corporate policy.  In addition, Employee shall be entitled to such holidays and sick leave as well as other benefits, including fringe benefits, provided to employee of other Midcoast subsidiaries with responsibilities comparable to Employee's responsibilities and other benefits as may be agreed to by the Parties.

D.    Miscellaneous Expenses.  Employer shall promptly reimburse Employee for all reasonable and necessary expenses incurred or paid by Employee incident to Employee's employment under this Agreement, including without limitation reasonable business entertainment, and other reasonable and necessary expenses directly associated with Employee's responsibilities.

## Section 6:  Termination of Employment.

A.    Mutual Agreement.  Either Party may terminate this Agreement at any time when Employer and Employee shall mutually agree in writing.

B.    Default.  This Agreement may, at Employer's option, be terminated for Cause.  For purposes of this Agreement Cause shall exist if (i) Employee defaults in the performance of his duties and fails to cure such default within ten (10) days after written notice thereof has been delivered to Employee, or (ii) Employee commits any act of fraud or malfeasance bearing on Employee's performance of his duties hereunder, or affecting the good name or reputation of the Employer or Midcoast or its subsidiaries.

2

C. **Disability.** This Agreement may likewise be terminated at Employer's option in the event Employee becomes Disabled. For the purposes this Agreement, "Disabled" shall mean an illness or injury that renders Employee unable to reasonably perform his essential functions for a continuous period of six (6) months or longer; provided, however, that Employer shall make reasonable and necessary accommodations to enable Employee to perform such functions. During any period of disability prior to termination of this Agreement, Employee shall be paid his regular compensation as defined herein above; and provided, further, that Employer's payments of such compensation shall be directly reduced by any amounts actually paid to Employee pursuant to any disability insurance policy purchased by Employer.

D. **Death.** This Agreement shall automatically terminate upon Employee's death.

E. **Payment of Compensation.** In the event this Agreement is terminated pursuant to Sections 6C., or 6D., the full amount of compensation remaining to be paid during the Primary Term of this Agreement shall be paid to Employee or to his surviving heirs, as determined at law or according to his Last Will and Testament, as applicable, in a lump sum discounted to reflect the current value of all future payments due hereunder at a discount rate of twelve percent (12%).

F. This Agreement may be terminated at Employee's option upon a Change of Control of Midcoast. As used herein, "Change of Control" means (i) the sale of all or substantially all of the assets of Midcoast to any person (other than a wholly-owned subsidiary of Midcoast) or related group (as that term is used in Section 13(d)(3) of the Securities Exchange Act of 1934) of persons (other than a wholly-owned subsidiary of Midcoast) as an entirety or substantially as an entirety in one transaction or series of related transactions, (ii) the first day on which a majority of the members of the board of directors of Midcoast are not Continuing Directors (i.e., any member of the board of directors who is a member of the board of directors on the date hereof or who was nominated for election to the board of directors with the affirmative vote of 2/3 of the Continuing Directors who are members of the board of directors at the time of such nomination or election), (iii) the acquisition by any person or group or persons (other than a wholly-owned subsidiary of Midcoast) of more than fifty percent (50%) of the total voting power entitled to vote generally in the election of the directors of Midcoast, or (iv) the liquidation or dissolution of Midcoast. In the event Employee elects to terminate his employment under this provision, Employee shall receive a lump sum payment equal to fifty percent (50%) of Employee's then current annual salary upon written notice of such election, which notice must be provided within 30 days of Employee's knowledge of such Change of Control.

**Section 7: Non-Disclosure of Confidential Information.** During the continuation of his employment hereunder, and at all times thereafter, Employee shall keep with absolute secrecy and shall not reveal, disclose, or publish to any person or entity other than the President of Employer, or otherwise utilize (other than for the proper performance of Employee's duties) any information of confidential or secret nature (including, without limitation, all trade secrets, designs inventions, computer software or other electronic data, financial information, customer lists and business prospects) concerning the specific affairs of the Employer or any person or entity owned by or owning, whole or in part, the Employer ("Confidential Information"). Upon termination of Employee's full time employment with Employer, Employee shall surrender to Employer all papers, documents, writings, computer disks, electronic

3

information and other property produced by him or coming into his possession by or through the rendering of his services to Employer and relating to the Confidential Information, and Employee agrees that all such materials shall at all times remain the property of Employer. The provisions of this Section shall survive any termination or expiration of the Agreement.

**Section 8:  Solicitation of Customers.**          Unless waived in writing by Employer, Employee further agrees that he will not, directly or indirectly, during the course of employment and for two (2) years thereafter contact either voluntarily or involuntarily, or for any reason whatsoever, solicit the trade or patronage of any of Employer's existing customers or prospective customers with whom Employer is negotiating, regardless of the location of such customers or prospective customers of the Employer throughout the United States.

**Section 9:  Covenant Not To Compete.**     For a period of two (2) years from the date of any termination of Employee's employment with the Employer, Employee shall not (i) accept employment with or render any services to or form an association with any business directly competitive with the Employer in the areas where it is doing business, or (ii) employ or offer to employ, in a professional capacity in any business directly competitive with the Employer, in the areas where it is doing business, anyone who is or has been a director, officer, shareholder, or employee of the Employer. Employee acknowledges that the restrictions imposed by this Agreement are fully understood and will not preclude Employee from becoming gainfully employed following a termination of employment with the Employer.

**Section 10: Automatic Release of Covenants.**  Notwithstanding anything herein to the contrary, the provision of paragraphs 8 and 9 hereof and the provisions of Section 11 of that certain "Agreement and Plan of Merger with respect to Dufour Petroleum, Inc. and Purchase Agreement pertaining to remaining Flare LLC Membership Interests" dated March 11, 1999, as said provisions apply to Employee, shall be terminated and held for naught:  (a) upon a Change of Control of Midcoast and Employee's involuntarily termination by Employer prior to the expiration of the Primary Term; or (b) Employer's material breach of this Agreement and its failure to remedy or cure such material breach within ten (10) days after written notice of such material breach has been delivered by Employee to Employer.

**Section 11:  General Provisions.**

    A.    Notices.  Any notice or other communications given or made under or pursuant to this Agreement shall be given in writing, shall be effective on receipt, and may be delivered to the relevant Party or sent by first class, postage prepaid, at the following address or such other address as any Party may hereafter designate by written notice:

| Employer: | Employee: |
|---|---|
| DPI/Midcoast, Inc. | Mike Howell |
| Attention:  Chairman of the Board | 181 Wildwood Trail |
| 1100 Louisiana, Suite 2950 | Petal, Mississippi  39465 |
| Houston, TX 77002 | |

4

**B.** **Other Agreements.** This Agreement, constitutes the entire agreement of the Parties hereto, expressly superseding all prior understandings, commitments, and agreements other than those expressly referred to in this Agreement, whether written or oral between Employer or its subsidiaries or predecessors and Employee.

**C.** **Governing Law.** This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas. The Parties agree that the District Court of Harris County, Texas, or the United States District Court of the Southern District of Texas, Houston Division, is the appropriate forum regarding any dispute relating to this Agreement.

**D.** **No Waiver.** The failure of either Party to insist in one or more instances on the performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of any right granted hereunder or of the future performance of any such term, covenant, or condition.

**E.** **Severability.** If any provision of this Agreement shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby.

**F.** **Headings.** Any headings or titles of sections or paragraphs are for convenience only and shall not limit nor amplify the provisions of this Agreement.

**G.** **Binding Agreement.** This Agreement shall inure to the benefit of and be binding on the undersigned Parties and their respective heirs, executors, successors, and assigns. Neither Party hereto may assign any or all of such Party's rights or obligations hereunder without prior written consent of the other Party hereto, except that Employer may assign to a subsidiary thereof without the consent of Employee.

**H.** **Contingency.** The Stock Options granted pursuant to Section 5.B. are contingent upon Employer's Board of Directors' Compensation Committee approval.

IN WITNESS HEREOF, the Parties hereto have executed this Agreement, effective as of the Effective Date first set forth above.

**EMPLOYER:**
**DPI/MIDCOAST, INC.**

By: _Dan C. Tutcher_
Name: _Dan C. Tutcher_
Title: _Chairman_

**EMPLOYEE:**

_MIKE HOWELL_

**ENBRIDGE**

Enbridge Energy Company, Inc.
Legal Department
1100 Louisiana Street, Suite 3300
Houston, Texas 77002
(713)821-2000
Fax: (713)821-2229

RECEIVED

MAR 0 9 2012

BRYAN NELSON P.A.

March 7, 2012

Mr. Curtis J. Dufour, III
123 W. Canebrake Blvd.
Hattiesburg, MS  39402-8341

Dear Mr. Dufour:

I am writing in reference to your employment agreement with DPI/Midcoast, Inc. ("Midcoast") dated March 11, 1999 (the "Employment Agreement") which is now held by Enbridge Energy Partners, L.P. ("Enbridge"). A copy of the Employment Agreement is attached hereto for your reference. Sections 8 and 9 of the Employment Agreement concern non-compete and non-solicitation covenants. Section 8 provides that during your employment, and for two (2) years thereafter, you will not, directly or indirectly, contact or solicit the trade of patronage of any of Employers existing or prospective customers with whom Employer is negotiating. Also, for a period of two (2) years following your termination Section 9 of the Employment Agreement states the following:

> Employee shall not (i) accept employment with or render any services to or from an association with any business directly competitive with the Employer in the areas where it is doing business, or (ii) employ or offer to employ, in a professional capacity in any business directly competitive with the Employer, in the areas where it is doing business, anyone who is or has been a director, officer, shareholder, or employee of the Employer.

I have information that you are in contact with and doing work for existing Enbridge customers or competitors. If this information is correct, this is in clear breach of the Employment Agreement. The obligation not to compete and not to solicit Enbridge's customers continues even though you are no longer employed at Enbridge.

Enbridge hereby formally demands that you immediately cease all competition against Enbridge and contact with Enbridge's customers and no longer solicit any current Enbridge customers or any of Enbridge's prospective customers at the time of your termination. Enbridge also reminds you of your covenant not to compete. Should you not cease violations of your non-compete and non-solicitation covenants, Enbridge



245020.pdf

intends to pursue all remedies available to it under law, including injunctive relief, monetary damages, and attorney's fees and costs.

Sincerely,

Chris Kailson
Vice President — U.S. Law &
Deputy General Counsel

CK:lmk

## EMPLOYMENT AGREEMENT

This Employment Agreement, effective as of the 11th day of March 1999, (the "Effective Date"), is by and between DPI/Midcoast Inc. ("Employer" or "DPI/Midcoast") and Curtis J. Dufour, III ("Employee"). Employer and Employee are herein sometimes referred to individually as "Party" and jointly as the "Parties". Midcoast Energy Resources, Inc. ("Midcoast") joins herein for the limited purposes of agreeing to the provisions of Section 10 of this Agreement.

Section 1: Employment and Scope of Service.

    A.    For and in consideration of the agreements set forth herein, Employer hereby employs Employee, and Employee hereby accepts employment from Employer as Chief Executive Officer of Employer. Employee hereby agrees to perform the services required of him in such capacity in good faith and with reasonable diligence, such duties being those reasonable and customary duties that are from time to time established, designated and communicated to Employee by the Board of Directors of Employer.

    B.    Employer shall, at Employer's sole cost and expense, provide Employee at Employer's principal place of business in Petal, MS reasonable office space and facilities including an office, supplies, and reasonable secretarial and administrative assistance consistent with Employee's position.

Section 2: Place of Employment. Employee's duties under this Agreement shall be performed principally and primarily at Employer's place of business in Petal ,Mississippi , and incidentally and secondarily at such other place or places to which Employer, from time to time, may reasonably request Employee to travel (at Employer's sole cost and expense) in connection with Employee's duties hereunder.

Section 3: Time Devoted Business. Employee shall give best efforts and endeavors to the discharge of his duties and responsibilities hereunder. Employee shall devote his full business time and attention to Employer's business; provided, however, that Employee may devote reasonable amounts of time to personal, outside businesses that do not compete with Employer, charitable, and professional activities so long as such activities do not materially interfere with the performance of Employee's duties hereunder. Employee's business activities with Maurice Gas Processing Co. and El Mesquite Plant, LC are excepted from the application of this paragraph.

Section 4: Term of Employment. For purposes of this Agreement, Employee's term of employment shall commence on the Effective Date hereof and shall terminate on the third anniversary of such date ("Primary Term"), unless earlier terminated in accordance with Section 6 hereof.

Section 5: Compensation. In consideration of the services to be performed hereunder, Employer agrees to pay or cause to be paid to Employee, and Employee agrees to accept, the following:

    A.    Base Salary. For all services rendered under this Agreement, beginning on the Effective Date, the Employer agrees to pay the Employee during the Employment Period an annual minimum salary ("Salary") in the amount of One Hundred Twenty-Five Thousand Dollars ($125,000) per year, payable in equal semi-monthly installments, or the equivalent amount payable on any other periodic basis consistent

245020.pdf

with the Employer's payroll procedures. Employee's base salary shall increase each year in an amount commensurate with other Midcoast Energy Resources, Inc.'s (hereinafter "Midcoast") subsidiaries' employees' with responsibilities comparable to Employee's responsibilities, which is anticipated to be a minimum of five percent (5%). Employer shall make appropriate deductions from Employee's salary for customary withholding taxes and other employment taxes as required for salaried compensation under Federal, State and local tax laws. Employee's Salary shall be in addition to any bonuses (in cash or stock) that may be given from time to time at the discretion of Employer.

B.  **Other Benefits.** Employee shall be entitled to vacation pay in accordance with Employer's written corporate policy which policy shall be identical to Midcoast's corporate policy. In addition, Employee shall be entitled to such holidays and sick leave as well as other benefits, including fringe benefits, provided to employees of other Midcoast subsidiaries with responsibilities comparable to Employee's responsibilities and other benefits as may be agreed to by the Parties.

C.  **Automobile.** Employer shall provide Employee with the use of an Employer owned automobile in connection with Employee's performance of his services for Employer under this Agreement.

D.  **Miscellaneous Expenses.** Employer shall promptly reimburse Employee for all reasonable and necessary expenses incurred or paid by Employee incident to Employee's employment under this Agreement, including without limitation reasonable business entertainment and other reasonable and necessary expenses directly associated with Employee's responsibilities.

## Section 6: Termination of Employment.

A.  **Mutual Agreement.** Either Party may terminate this Agreement at any time when Employer and Employee shall mutually agree in writing.

B.  **Default.** This Agreement may, at Employer's option, be terminated for Cause. For purposes of this Agreement, Cause shall exist if (i) Employee defaults in the performance of his duties and fails to cure such default within ten (10) days after written notice thereof has been delivered to Employee, or (ii) Employee commits any act of fraud or malfeasance bearing on Employee's performance of his duties hereunder, or affecting the good name or reputation of the Employer or Midcoast or its subsidiaries.

C.  **Disability.** This Agreement may likewise be terminated at Employer's option in the event Employee becomes Disabled. For the purposes this Agreement, "Disabled" shall mean an illness or injury that renders Employee unable to reasonably perform his essential functions for a continuous period of six (6) months or longer; provided, however, that Employer shall make reasonable and necessary accommodations to enable Employee to perform such functions. During any period of disability prior to termination of this Agreement, Employee shall be paid his regular compensation as defined herein above; and provided, further, that Employer's payments of such compensation shall be directly reduced by any amounts actually paid to Employee

2

pursuant to any disability insurance policy purchased by Employer.

D.   Death. This Agreement shall automatically terminate upon Employee's death.

E.   Payment of Compensation.  In the event this Agreement is terminated pursuant to Sections 6C. or 6D., the full amount of compensation remaining to be paid during the Primary Term of this Agreement shall be paid to Employee or to his surviving heirs, as determined at law or according to his Last Will and Testament, as applicable, in a lump sum discounted to reflect the current value of all future payments due hereunder at a discount rate of twelve percent (12%).

F.   Change of Control. This Agreement may be terminated at Employee's option upon a Change of Control of Midcoast.  As used herein and in Section 10 of the Agreement, "Change of Control" means (i) the sale of all or substantially all of the assets of Midcoast to any person (other than a wholly-owned subsidiary of Midcoast) or related group (as that term is used in Section 13(d)(3) of the Securities Exchange Act of 1934) of persons (other than a wholly-owned subsidiary of Midcoast) as an entirety or substantially as an entirety in one transaction or series of related transactions, or (ii) the first day on which a majority of the members of the board of directors of Midcoast are not continuing directors or (iii) the acquisition by any person or group or persons (other than a wholly-owned subsidiary of Midcoast) of more than fifty percent (50%) of the total voting power entitled to vote generally in the election of the directors of Midcoast, other than by a public offering or private placement of the shares, or (iv) the liquidation or dissolution of Midcoast. In the event Employee elects to terminate his employment under this provision, Employee shall receive a lump sum payment equal to fifty percent (50%) of Employee's then current annual salary upon written notice of such election, which notice must be provided within 30 days of Employee's knowledge of such Change of Control.

Section 7:  Non-Disclosure of Confidential Information. During the continuation of his employment hereunder, and at all times thereafter, Employee shall keep with absolute secrecy and shall not reveal, disclose, or publish to any person or entity other than the President of Employer, or otherwise utilize (other than for the proper performance of Employee's duties) any information of confidential or secret nature (including, without limitation, all trade secrets, designs inventions, computer software or other electronic data, financial information, customer lists and business prospects) concerning the specific affairs of the Employer or any person or entity owned by or owning, whole or in part, the Employer ("Confidential Information").  Upon termination of Employee's full time employment with Employer, Employee shall surrender to Employer all papers, documents, writings, computer disks, electronic information and other property produced by him or coming into his possession by or through the rendering of his services to Employer and relating to the Confidential Information, and Employee agrees that all such materials shall at all times remain the property of Employer.  The provisions of this Section shall survive any termination or expiration of the Agreement.

Section 8:  Solicitation of Customers.  Unless waived in writing by Employer, Employee further agrees that he will not, directly or indirectly, during the course of employment and for two (2) years thereafter contact either voluntarily or involuntarily, or for any reason whatsoever, solicit the trade or patronage of any of Employer's existing customers or prospective customers with whom Employer is negotiating, regardless of the location of such customers or prospective customers of the Employer

3

throughout the United States.

**Section 9:** Covenant Not To Compete.   For a period of two (2) years from the date of any termination of Employee's employment with the Employer, Employee shall not (i) accept employment with or render any services to or form an association with any business directly competitive with the Employer in the areas where it is doing business, nor engage in the marketing and transportation of liquified petroleum gases, including carbon dioxide, within the immediate geographic areas where employer is conducting such business and/or with the then existing customers with which such employer is doing business; and/or within the areas or with prospective customers that employee is involved in the evaluation of or the development of at the time of employee's termination, or (ii) employ or offer to employ, in a professional capacity in any business directly competitive with the Employer, in the areas where it is doing business, anyone who is or has been a director, officer, shareholder, or employee of the Employer.   Employee acknowledges that the restrictions imposed by this Agreement are fully understood and will not preclude Employee from becoming gainfully employed following a termination of employment with the Employer.

**Section 10:** Automatic Release of Covenants.   Notwithstanding anything herein to the contrary, the provisions of paragraphs 8 and 9 hereof and the provisions of Section 11 of that certain "Agreement and Plan of Merger with respect to Dufour Petroleum, Inc and Purchase Agreement pertaining to remaining Flare LLC Membership Interests" dated March 11, 1999, as said provisions apply to Employee, shall be terminated and held for naught: (a) upon a Change of Control of Midcoast and Employee's involuntarily termination by Employer prior to the expiration of the Primary Term; or (b) Employer's material breach of this Agreement and its failure to remedy or cure such material breach within ten (10) days after written notice of such material breach has been delivered by Employee to Employer.

**Section 11:** General Provisions.

    A.    Notices.  Any notice or other communications given or made under or pursuant to this Agreement shall be given in writing, shall be effective on receipt, and may be delivered to the relevant Party or sent by first class, postage prepaid, at the following address or such other address as any Party may hereafter designate by written notice:

Employer:
DPI/MIDCOAST, INC.
Attention: Chairman of the Board
1100 Louisiana, Suite 2950
Houston, TX 77002

Employee:
Curtis J. Dufour, III
100 W. Canebreak
Hattiesburg, Mississippi 39404

    B.    Other Agreements.  This Agreement, constitutes the entire agreement of the Parties hereto, expressly superseding all prior understandings, commitments, and agreements other than those expressly referred to in this Agreement, whether written or oral between Employer or its subsidiaries or predecessors and Employee.

    C.    Governing Law. This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas. The Parties agree that the District Court of Harris County, Texas, or the United

4

States District Court of the Southern District of Texas, Houston Division, is the appropriate forum regarding any dispute relating to this Agreement.

D.   No Waiver. The failure of either Party to insist in one or more instances on the performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of any right granted hereunder or of the future performance of any such term, covenant, or condition.

E.   Severability. If any provision of this Agreement shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby.

F.   Headings. Any headings or titles of sections or paragraphs are for convenience only and shall not limit nor amplify the provisions of this Agreement.

G.   Binding Agreement. This Agreement shall inure to the benefit of and be binding on the undersigned Parties and their respective heirs, executors, successors, and assigns. Neither Party hereto may assign any or all of such Party's rights or obligations hereunder without prior written consent of the other Party hereto, except that Employer may assign to a subsidiary thereof without the consent of Employee.

IN WITNESS HEREOF, the Parties hereto have executed this Agreement, effective as of the Effective Date first set forth above.

EMPLOYER:
DPI/MIDCOAST, INC.

By: _____
Name: Dan C. Tutcher
Title: President/Chairman

MIDCOAST ENERGY RESOURCES, INC.

By: _____
Dan C. Tutcher
President

EMPLOYEE:

_____
CURTIS A. DUFOUR, III

5

245020.pdf



Enbridge Energy Company, Inc.
Legal Department
1100 Louisiana Street, Suite 3300
Houston, Texas 77002
(713)821-2000
Fax: (713)821-2229

March 7, 2012

Mr. Michael E. Howell
181 Wildwood Trail
Petal, MS 39465-2681

Dear Mr. Howell:

I am writing in reference to your employment agreement with DPI/Midcoast, Inc. ("Midcoast") dated March 11, 1999 (the "Employment Agreement") which is now held by Enbridge Energy Partners, L.P. ("Enbridge"). A copy of the Employment Agreement is attached hereto for your reference. Sections 8 and 9 of the Employment Agreement concern non-compete and non-solicitation covenants. Section 8 provides that during your employment, and for two (2) years thereafter, you will not, directly or indirectly, contact or solicit the trade of patronage of any of Employers existing or prospective customers with whom Employer is negotiating. Also, for a period of two (2) years following your termination Section 9 of the Employment Agreement states the following:

> Employee shall not (i) accept employment with or render any services to or from an association with any business directly competitive with the Employer in the areas where it is doing business, or (ii) employ or offer to employ, in a professional capacity in any business directly competitive with the Employer, in the areas where it is doing business, anyone who is or has been a director, officer, shareholder, or employee of the Employer.
>
> . . .

I have information that you are in contact with and doing work for existing Enbridge customers or competitors. If this information is correct, this is in clear breach of the Employment Agreement. The obligation not to compete and not to solicit Enbridge's customers continues even though you are no longer employed at Enbridge.

Enbridge hereby formally demands that you immediately cease all competition against Enbridge and contact with Enbridge's customers and no longer solicit any current Enbridge customers or any of Enbridge's prospective customers at the time of your termination. Enbridge also reminds you of your covenant not to compete. Should you not cease violations of your non-compete and non-solicitation covenants, Enbridge



intends to pursue all remedies available to it under law, including injunctive relief, monetary damages, and attorney's fees and costs.

Sincerely,

Chris Kaitson
Vice President – U.S. Law &
Deputy General Counsel

CK:lmk

## EMPLOYMENT AGREEMENT

This Employment Agreement, effective as of the 11th day of March 1999, (the "Effective Date"), is by and between DPI/Midcoast, Inc. ("Employer" or "Midcoast") and Mike Howell ("Employee"). Employer and Employee are herein sometimes referred to individually as "Party" and jointly as "Parties".

**Section 1: Employment and Scope of Service.**

A.  For and in consideration of the agreements set forth herein, Employer hereby employs Employee, and Employee hereby accepts employment from Employer as President of Employer. Employee hereby agrees to perform the services required of him in such capacity in good faith and with reasonable diligence, such duties being those reasonable and customary duties that are from time to time established, designated and communicated to Employee by the Board of Directors of Employer.

B.  Employer shall, at Employer's sole cost and expense, provide Employee at Employer's principal place of business reasonable office space and facilities including an office, supplies, and reasonable secretarial and administrative assistance consistent with Employee's position.

**Section 2: Place of Employment.** Employee's duties under this Agreement shall be performed principally and primarily at Employer's place of business in Petal, Mississippi, and incidentally and secondarily at such other place or places to which Employer, from time to time, may reasonably request Employee to travel (at Employer's sole cost and expense) in connection with Employee's duties hereunder.

**Section 3: Time Devoted Business.** Employee shall give best efforts and endeavors to the discharge of his duties and responsibilities hereunder. Employee shall devote his full business time and attention to Employer's business; provided, however, that Employee may devote reasonable amounts of time to personal, outside businesses that do not compete with Employer, charitable, and professional activities so long as such activities do not materially interfere with the performance of Employee's duties hereunder.

**Section 4: Term of Employment.** For purposes of this Agreement, Employee's term of employment shall commence on the Effective Date hereof and shall terminate on the third anniversary of such date ("Primary Term"), unless earlier terminated in accordance with Section 6 hereof.

**Section 5: Compensation.** In consideration of the services to be performed hereunder, Employer agrees to pay or cause to be paid to Employee, and Employee agrees to accept, the following:

A.  Base Salary. For all services rendered under this Agreement, beginning on the Effective Date, the Employer agrees to pay the Employee during the Employment Period an annual minimum salary ("Salary") in the amount of Ninety Thousand Dollars ($90,000) per year, payable in equal semi-monthly installments, or the equivalent amount payable on any other periodic basis consistent with the Employer's payroll procedures (but no less frequently than monthly). Employee's base salary shall increase each year in an amount commensurate with other Midcoast Energy Resources, Inc.'s

245021.pdf

245021.pdf

(hereinafter "Midcoast") subsidiaries' employees' with responsibilities comparable to Employee's responsibilities, which is anticipated to be a minimum of five percent (5%). Employer shall make appropriate deductions from Employee's salary for customary withholding taxes and other employment taxes as required for salaried compensation under Federal, State and local tax laws. Employee's Salary shall be in addition to any bonuses (in cash or stock) that may be given from time to time at the discretion of Employer.

B.   Stock Options.  Subject to this Agreement, Employee is granted the option to purchase Twelve Thousand Five Hundred shares of the Common Stock of Midcoast Energy Resources, Inc. for a period of 10 years from the Effective Date at an exercise price equal to the closing price of shares as listed on the American Stock Exchange on the Effective Date of this Agreement, vesting as follows:

| | |
|---|---|
| At the end of the 1st year: | 2,500 shares shall have vested; |
| At the end of the 2nd year: | an additional 2,500 shares shall have vested; |
| At the end of the 3rd year: | an additional 2,500 shares shall have vested; |
| At the end of the 4th year: | an additional 2,500 shares shall have vested; |
| At the end of the 5th year: | an additional 2,500 shares shall have vested; |

C.   Other Benefits.  Employee shall be entitled to vacation pay in accordance with Employer's written corporate policy which policy shall be identical to Midcoast's corporate policy.  In addition, Employee shall be entitled to such holidays and sick leave as well as other benefits, including fringe benefits, provided to employee of other Midcoast subsidiaries with responsibilities comparable to Employee's responsibilities and other benefits as may be agreed to by the Parties.

D.   Miscellaneous Expenses.  Employer shall promptly reimburse Employee for all reasonable and necessary expenses incurred or paid by Employee incident to Employee's employment under this Agreement, including without limitation reasonable business entertainment, and other reasonable and necessary expenses directly associated with Employee's responsibilities.

## Section 6:  Termination of Employment.

A.   Mutual Agreement.  Either Party may terminate this Agreement at any time when Employer and Employee shall mutually agree in writing.

B.   Default.  This Agreement may, at Employer's option, be terminated for Cause.  For purposes of this Agreement Cause shall exist if (i) Employee defaults in the performance of his duties and fails to cure such default within ten (10) days after written notice thereof has been delivered to Employee, or (ii) Employee commits any act of fraud or malfeasance bearing on Employee's performance of his duties hereunder, or affecting the good name or reputation of the Employer or Midcoast or its subsidiaries.

2

C.   **Disability.** This Agreement may likewise be terminated at Employer's option in the event Employee becomes Disabled. For the purposes this Agreement, "Disabled" shall mean an illness or injury that renders Employee unable to reasonably perform his essential functions for a continuous period of six (6) months or longer; provided, however, that Employer shall make reasonable and necessary accommodations to enable Employee to perform such functions. During any period of disability prior to termination of this Agreement, Employee shall be paid his regular compensation as defined herein above; and provided, further, that Employer's payments of such compensation shall be directly reduced by any amounts actually paid to Employee pursuant to any disability insurance policy purchased by Employer.

D.   **Death.** This Agreement shall automatically terminate upon Employee's death.

E.   **Payment of Compensation.** In the event this Agreement is terminated pursuant to Sections 6C., or 6D., the full amount of compensation remaining to be paid during the Primary Term of this Agreement shall be paid to Employee or to his surviving heirs, as determined at law or according to his Last Will and Testament, as applicable, in a lump sum discounted to reflect the current value of all future payments due hereunder at a discount rate of twelve percent (12%).

F.   This Agreement may be terminated at Employee's option upon a Change of Control of Midcoast. As used herein, "Change of Control" means (i) the sale of all or substantially all of the assets of Midcoast to any person (other than a wholly-owned subsidiary of Midcoast) or related group (as that term is used in Section 13(d)(3) of the Securities Exchange Act of 1934) of persons (other than a wholly-owned subsidiary of Midcoast) as an entirety or substantially as an entirety in one transaction or series of related transactions, (ii) the first day on which a majority of the members of the board of directors of Midcoast are not Continuing Directors (i.e., any member of the board of directors who is a member of the board of directors on the date hereof or who was nominated for election to the board of directors with the affirmative vote of 2/3 of the Continuing Directors who are members of the board of directors at the time of such nomination or election), (iii) the acquisition by any person or group or persons (other than a wholly-owned subsidiary of Midcoast) of more than fifty percent (50%) of the total voting power entitled to vote generally in the election of the directors of Midcoast, or (iv) the liquidation or dissolution of Midcoast. In the event Employee elects to terminate his employment under this provision, Employee shall receive a lump sum payment equal to fifty percent (50%) of Employee's then current annual salary upon written notice of such election, which notice must be provided within 30 days of Employee's knowledge of such Change of Control.

**Section 7: Non-Disclosure of Confidential Information.** During the continuation of his employment hereunder, and at all times thereafter, Employee shall keep with absolute secrecy and shall not reveal, disclose, or publish to any person or entity other than the President of Employer, or otherwise utilize (other than for the proper performance of Employee's duties) any information of confidential or secret nature (including, without limitation, all trade secrets, designs inventions, computer software or other electronic data, financial information, customer lists and business prospects) concerning the specific affairs of the Employer or any person or entity owned by or owning, whole or in part, the Employer ("Confidential Information"). Upon termination of Employee's full time employment with Employer, Employee shall surrender to Employer all papers, documents, writings, computer disks, electronic

3

information and other property produced by him or coming into his possession by or through the rendering of his services to Employer and relating to the Confidential Information, and Employee agrees that all such materials shall at all times remain the property of Employer. The provisions of this Section shall survive any termination or expiration of the Agreement.

**Section 8: Solicitation of Customers.**     Unless waived in writing by Employer, Employee further agrees that he will not, directly or indirectly, during the course of employment and for two (2) years thereafter contact either voluntarily or involuntarily, or for any reason whatsoever, solicit the trade or patronage of any of Employer's existing customers or prospective customers with whom Employer is negotiating, regardless of the location of such customers or prospective customers of the Employer throughout the United States.

**Section 9: Covenant Not To Compete.**     For a period of two (2) years from the date of any termination of Employee's employment with the Employer, Employee shall not (i) accept employment with or render any services to or form an association with any business directly competitive with the Employer in the areas where it is doing business, or (ii) employ or offer to employ, in a professional capacity in any business directly competitive with the Employer, in the areas where it is doing business, anyone who is or has been a director, officer, shareholder, or employee of the Employer. Employee acknowledges that the restrictions imposed by this Agreement are fully understood and will not preclude Employee from becoming gainfully employed following a termination of employment with the Employer.

**Section 10: Automatic Release of Covenants.** Notwithstanding anything herein to the contrary, the provision of paragraphs 8 and 9 hereof and the provisions of Section 11 of that certain "Agreement and Plan of Merger with respect to Dufour Petroleum, Inc. and Purchase Agreement pertaining to remaining Flare LLC Membership Interests" dated March 11, 1999, as said provisions apply to Employee, shall be terminated and held for naught: (a) upon a Change of Control of Midcoast and Employee's involuntarily termination by Employer prior to the expiration of the Primary Term; or (b) Employer's material breach of this Agreement and its failure to remedy or cure such material breach within ten (10) days after written notice of such material breach has been delivered by Employee to Employer.

**Section 11: General Provisions.**

A.  Notices. Any notice or other communications given or made under or pursuant to this Agreement shall be given in writing, shall be effective on receipt, and may be delivered to the relevant Party or sent by first class, postage prepaid, at the following address or such other address as any Party may hereafter designate by written notice:

Employer:
DPI/Midcoast, Inc.
Attention: Chairman of the Board
1100 Louisiana, Suite 2950
Houston, TX 77002

Employee:
Mike Howell
181 Wildwood Trail
Petal, Mississippi 39465

4

245021.pdf

B.   **Other Agreements.** This Agreement, constitutes the entire agreement of the Parties hereto, expressly superseding all prior understandings, commitments, and agreements other than those expressly referred to in this Agreement, whether written or oral between Employer or its subsidiaries or predecessors and Employee.

C.   **Governing Law.** This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas. The Parties agree that the District Court of Harris County, Texas, or the United States District Court of the Southern District of Texas, Houston Division, is the appropriate forum regarding any dispute relating to this Agreement.

D.   **No Waiver.** The failure of either Party to insist in one or more instances on the performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of any right granted hereunder or of the future performance of any such term, covenant, or condition.

E.   **Severability.** If any provision of this Agreement shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby.

F.   **Headings.** Any headings or titles of sections or paragraphs are for convenience only and shall not limit nor amplify the provisions of this Agreement.

G.   **Binding Agreement.** This Agreement shall inure to the benefit of and be binding on the undersigned Parties and their respective heirs, executors, successors, and assigns. Neither Party hereto may assign any or all of such Party's rights or obligations hereunder without prior written consent of the other Party hereto, except that Employer may assign to a subsidiary thereof without the consent of Employee.

H.   **Contingency.** The Stock Options granted pursuant to Section 5.B. are contingent upon Employer's Board of Directors' Compensation Committee approval.

*IN WITNESS HEREOF,* the Parties hereto have executed this Agreement, effective as of the Effective Date first set forth above.

**EMPLOYER:**                                                    **EMPLOYEE:**
**DPI/MIDCOAST, INC.**

By: _____

Name: _____                    Mike Howell

Title: _____

ck96gp/067

5

245021.pdf

**B.**    Other Agreements. This Agreement, constitutes the entire agreement of the Parties hereto, expressly superseding all prior understandings, commitments, and agreements other than those expressly referred to in this Agreement, whether written or oral between Employer or its subsidiaries or predecessors and Employee.

**C.**    Governing Law. This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas. The Parties agree that the District Court of Harris County, Texas, or the United States District Court of the Southern District of Texas, Houston Division, is the appropriate forum regarding any dispute relating to this Agreement.

**D.**    No Waiver. The failure of either Party to insist in one or more instances on the performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of any right granted hereunder or of the future performance of any such term, covenant, or condition.

**E.**    Severability. If any provision of this Agreement shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby.

**F.**    Headings. Any headings or titles of sections or paragraphs are for convenience only and shall not limit nor amplify the provisions of this Agreement.

**G.**    Binding Agreement. This Agreement shall inure to the benefit of and be binding on the undersigned Parties and their respective heirs, executors, successors, and assigns. Neither Party hereto may assign any or all of such Party's rights or obligations hereunder without prior written consent of the other Party hereto, except that Employer may assign to a subsidiary thereof without the consent of Employee.

**H.**    Contingency. The Stock Options granted pursuant to Section 5.B. are contingent upon Employer's Board of Directors' Compensation Committee approval.

IN WITNESS HEREOF, the Parties hereto have executed this Agreement, effective as of the Effective Date first set forth above.

**EMPLOYER:**                                                              **EMPLOYEE:**
**DPI/MIDCOAST, INC.**

By: _Dan C. Tutcher_
Name: _Dan C. Tutcher_                                              _Mike Howell_
Title: _Chairman_                                                         **MIKE HOWELL**

IN THE CHANCERY COURT OF FORREST COUNTY, MISSISSIPPI

CURTIS J. DUFOUR, III AND
MICHAEL E. HOWELL      MAR 15 2012      **PLAINTIFFS**

VS.      CIVIL ACTION NO. ___12-0197-GN-DO___

ENBRIDGE ENERGY PARTNERS, L.P.     Chancery Clerk      **DEFENDANT**

## MOTION FOR TEMPORARY RESTRAINING
## ORDER AND PRELIMINARY INJUNCTION

COME NOW, Plaintiffs, Curtis J. Dufour, III, and Michael E. Howell, and file this their

Motion for Temporary Restraining Order and Preliminary Injunction as to Defendant, Enbridge

Energy Partners, L.P., pursuant to Rule 65 of the Mississippi Rules of Civil Procedure. In support

of this Motion, Plaintiffs would show unto this Honorable Court the following:

1.     On or about March 11, 1999, Midcoast Energy Resources, Inc. entered into an

"Agreement and Plan of Merger with Respect to Dufour Petroleum, Inc. and Purchase Agreement

Pertaining to Remaining Flare, LLC Membership Interest" (hereinafter "Merger Agreement") with

Dufour and Howell, among others. A true and correct copy of relevant portions of the Merger

Agreement is attached hereto as Exhibit "1" with redactions of any confidential information. The

agreement provided in Section 11 on Page 54-5 as follows:

> 11.    <u>Prohibited Activities of the DPI Shareholders and Michael E. Howell.</u> In
> order to protect the goodwill and business interests of DPI and Flare following the
> Closing, the DPI Shareholders and Michael E. Howell covenant and agree that they
> will not:
>
>      (a)     directly or indirectly, for a period of five (5) years from the Closing
> Date, request or advise any party to any contracts of commitments, now or hereafter
> existing, with DPI, Magnolia or Flare, or their respective successors, to withdraw,
> curtail or cancel any service to or from such parties under the terms of such contract
> or commitment;
>
>      (b)     for a period of five (5) years from the Closing Date, aid, abet or
> otherwise assist any person, firm or corporation seeking to interfere with DPI's and

244854.docx      Page 1

Flare's or their successors' relationship with the parties to, or the term of, any contract, now or hereafter existing, with it; or

(c)   acting alone or in conjunction with others, directly or indirectly, in Mississippi, Alabama, Louisiana, and Texas, for a period of five (5) years from the Closing Date, engage in any businesses in competition with the respective businesses presently conducted by DPI and Flare or their successors, whether for their own account or for others.

It is recognized that Curtis J. Dufour, III owns an interest in Maurice Gas Processing Co. (through DPI Gas Marketing and Gathering Co.) and El Mesquite Plant, LC, two (2) companies that own natural gas processing plants.   Notwithstanding anything herein to the contrary, it is agreed that the covenants contained in Section 11(a), (b), and (c) shall not pertain to Curtis J. Dufour, III's ownership interest in Maurice Gas Processing Co. and El Mesquite Plant, LC and the business of those entities.

*See,* Exhibit "1".

2.     At or about the same time as the Merger Agreement was entered into, Plaintiffs also entered into an agreement with the surviving entity of the Merger Agreement, DPI/Midcoast, Inc., providing for the terms of Plaintiffs' employment.  A true and correct copy of the Employment Agreement entered into by Dufour is attached as Exhibit "2" and the Employment Agreement entered into by Howell is attached as Exhibit "3".

3.     The Employment Agreements provided, both with respect to Dufour and Howell, as follows regarding the term of employment under this agreement:

**Section 4:   Term of Employment.**  For purposes of this Agreement, Employee's term of employment shall commence on the Effective Date hereof and shall terminate on the third anniversary of such date ("Primary Term"), unless earlier terminated in accordance with Section 6 hereof.

*See,* Exhibits "2" and "3".

4.     The Employment Agreements entered into between DPI/Midcoast, Inc., and both Dufour and Howell further contain a provision with regard to, "Non-Disclosure of Confidential Information." *See,* Exhibits "2" and "3".  Specifically, Section 7 of the Agreements provide that the

prohibition of disclosure of confidential information, "shall survive any termination or expiration of the Agreement." *Id.*

5.      Sections 8 and 9 of the Employment Agreements concern a prohibition from solicitation of customers and covenants not to compete.  Specifically, these sections contain no provision that any such prohibitions regarding those undertakings survived termination or expiration of the agreement. *Id.*

6.      Under Section 11 of the Dufour and Howell Employment Agreements, subparagraph G, the terms of the agreement expressly and unambiguously provide that neither party "may assign any or all of such Party's rights or obligations hereunder without prior written consent of the other Party hereto, except that Employer may assign to a subsidiary thereof without the consent of Employee." *Id.*

7.      Sometime after three (3) years from March 11, 1999, Enbridge purchased DPI/Midcoast, Inc. Upon information and belief the purchase date was sometime in May of 2002.

8.      At the time of Enbridge's purchase of DPI/Midcoast, Inc., the Employment Agreements of both Dufour and Howell had terminated and/or expired pursuant to Section 4 of the agreements.  Under the terms of Section 4, the term of employment under the agreement commenced on the effective date of March 11, 1999 and terminated on the third anniversary of that date or March 11, 2002. Accordingly, Plaintiffs' employment under the employment agreement had terminated and/or expired at the time Enbridge purchased DPI/Midcoast, Inc.  Furthermore, the agreement itself prohibits assignment without the consent of the other party and no such consent was given by Plaintiffs.  There have been no renewals of either of the Employment Agreements. Additionally, Plaintiffs have not given consent or their agreement to any assignment of any rights or

obligations arising pursuant to the Employment Agreements entered into with DPI/Midcoast, Inc., to Enbridge.

9.      The Employment Agreements further provide for certain rights to Dufour and Howell upon a change of control of DPI/Midcoast, Inc. which rights are clearly designed to prevent enforcement of the non-compete or non-solicitation provisions of the Employment Agreements upon change of control of DPI/Midcoast, Inc. which did occur with the Enbridge purchase. *See*, Section 6 F and Section 10 of the agreements attached as Exhibits "2" and "3" to this Complaint.

10.      In summary, Enbridge was not a party to either the Merger Agreement or the Employment Agreements. As a stranger to the Employment Agreements, Enbridge has no legal right or legal interest to enforce the Employment Agreements. Endrige never received any rights under the employment agreement between DPI/Midcoast, Inc. and Dufour and Howell, since any such rights could not be assigned as provided by the express and unambiguous terms of the Agreements. Further, none of the rights under the agreement granted to DPI/Midcoast, Inc. regarding non-compete or non-solicitation survive beyond five (5) years from the date the Agreements were executed. The Merger Agreement (Exhibit "1" to the Complaint) sets out the five (5) year non-compete which is identical to the three (3) year term of the Employment Agreement plus a two (2) year non-compete for the same five (5) year period.

11.      On or about December 9, 2011, the employment of Dufour and Howell with Enbridge ended.

12.      On or about March 7, 2012, Chris Kaitson, Vice President-U.S. Law & Deputy General Counsel of Enbridge Energy Company, wrote letters to both Dufour and Howell threatening to institute litigation against both Dufour and Howell in the event they did not comply with the provisions of the employment agreement referenced above and attached as Exhibits "2" and "3" to

this Complaint. True and correct copies of these letters with the attachments received by Dufour and Howell are attached as Exhibits "4" and "5", respectively.

13.     Both Dufour and Howell have for decades operated in the energy business in many capacities as brokers, buyers, sellers, transporters and in other ways in the oil, gas, condensate, storage and transportation industry. The enforcement of any noncompetition provision contained in Agreements to which Enbridge was not even a party, to which Enbridge has not acquired any rights, and which have terminated and expired by their own terms against Dufour and Howell would render them unable to be gainfully employed. In addition to the facts outlined above which render the agreement completely unenforceable by Enbridge, the terms of the agreement itself are overly broad and unenforceable.

## REQUEST FOR INJUNCTIVE RELIEF

14.     Based on the foregoing, Plaintiffs request that this court enter a Temporary Restraining Order and Preliminary Injunction to enjoin Enbridge Energy Partners, L.P. and those acting in concert and privity with them as provided for by Rule 65 of the Mississippi Rules of Civil Procedure from enforcing or seeking to enforce the employment agreements attached as Exhibits "2" and "3" to this Complaint, or taking actions or steps as outlined by the letter of Mr. Chris Kaitson to seek to enforce such agreements. In support of this request for entry of a Temporary Restraining Order and Preliminary Injunction, Dufour and Howell would show this Honorable Court as follows:

a.     This request for injunctive relief is necessary in order to prevent irreparable harm to Plaintiffs, who without the injunctive relief would be subject to litigation instituted by Enbridge seeking to enforce an agreement in which it has no legal rights and that has terminated/expired by its own express and unambiguous terms, likely filed in a foreign court;

244854.docx

b.      Issuance of an injunction against Defendant seeking to enforce these agreements against Plaintiffs would not cause any undue prejudice to Defendant and furthermore such an injunction would not be against public policy as employment agreements restricting employment opportunities of plaintiffs are disfavored under the law.  Furthermore, issuance of an injunction and protection of Plaintiffs from actions threatened by Defendant would be in furtherance of public policy favoring unrestricted employment and business opportunities of citizens of this State and disfavoring restrictions on such opportunities;

c.      This Court has a local interest in resolution of this dispute in that both Plaintiffs are and have been citizens of Forrest and Lamar Counties, in Mississippi and restrictions on their business and employment opportunities adversely affect the economy of our community.  Because the expired and unenforceable agreement on which Defendant relies contains a forum selection clause that is also not enforceable, the Defendant is likely to seek review of the agreement in a foreign forum which would be unfairly prejudicial to Defendants; and

d.      While Plaintiffs contend that any security or bond that might be required should be minimal, they stand ready to post a reasonable bond if the Court deems it is necessary and in the interest of justice to do so.

15.     Plaintiffs have no adequate remedy at law to prevent Defendant's wrongful conduct seeking to enforce an agreement to limit their ability to earn a living under which Defendant has no rights.

16.     The acts of Defendant have caused and continue to cause damage to Plaintiffs in that Plaintiffs are precluded from engaging in business and employment opportunities in order to support themselves and their families.

17.     There exists a substantial likelihood that Plaintiffs will prevail on the merits of this matter because Defendant is a complete stranger to the contracts that Defendant threatens to enforce against Plaintiffs, the contracts have expired, the claims of the Plaintiffs are clear and the requested relief is narrowly tailored to protect a legitimate business interest of Plaintiffs to be able to make a living.

18.     A Temporary Restraining Order and Preliminary Injunction is necessary to prevent irreparable harm to Plaintiffs, and the threatened injury to Plaintiffs outweighs the harm a Temporary Restraining Order and Preliminary Injunction might do to Defendant.

19.     The entry of a Temporary Restraining Order and Preliminary Injunction by this Court is consistent with the public interest.

20.     Plaintiffs request this Court to issue a Temporary Restraining Order and Preliminary Injunction against Defendant, enjoining them and those in privity, active concert or participation with Defendant from:

a.      Enforcing or seeking to enforce the Employment Agreements attached as Exhibits "2" and "3" to the Complaint, or taking actions or steps as outlined by the letter of Mr. Chris Kaitson to seek to enforce such agreements to include the initiation of other litigation against Plaintiffs in a forum other than this Court; and

b.      Plaintiffs' request for injective relief is necessary in order to prevent irreparable harm to Plaintiffs, who without the injunctive relief would be subject to litigation instituted by Enbridge seeking to enforce an agreement in which it has no legal rights and that has terminated/expired by its own express and unambiguous terms, likely filed in a foreign court.

WHEREFORE, on the basis of the foregoing, Plaintiffs respectfully request that this Court issue a Temporary Restraining Order pursuant to Rule 65 of the Mississippi Rules of Civil

244854.docx

Procedure and that a evidentiary hearing on Plaintiffs' request for a Preliminary Injunction be scheduled with the Court within ten (10) days of the issuance of the Temporary Restraining Order and that the appropriate injunctions be entered by the Court. Plaintiffs further seek any additional relief to which they may be entitled.

This the 15 day of March, 2012.

Respectfully submitted,

**CURTIS J. DUFOUR, III AND
MICHAEL E. HOWELL, PLAINTIFFS**

David M. Ott, MS Bar No. 3948
William A. Whitehead, Jr., MS Bar No. 10152

BRYAN NELSON P.A.
Post Office Drawer 18109
Hattiesburg, Mississippi 39404
T: (601) 261-4100
F: (601) 261-4106
Web: www.bnlawfirm.com

AGREEMENT AND PLAN OF MERGER

WITH RESPECT TO

DUFOUR PETROLEUM, INC.

AND

PURCHASE AGREEMENT PERTAINING TO

REMAINING FLARE, LLC MEMBERSHIP INTERESTS

1



AGREEMENT AND PLAN OF MERGER
WITH RESPECT TO
DUFOUR PETROLEUM, INC.
AND
PURCHASE AGREEMENT PERTAINING TO
REMAINING FLARE, L.L.C. MEMBERSHIP INTERESTS

THIS AGREEMENT AND PLAN OF MERGER WITH RESPECT TO DUFOUR PETROLEUM, INC. AND PURCHASE AGREEMENT PERTAINING TO REMAINING FLARE, L.L.C. MEMBERSHIP INTERESTS (this "Agreement") dated as of March 11, 1999, is made by and among the following parties (hereinafter collectively referred to as the "Parties" and individually as a "Party"): Midcoast Energy Resources, Inc., a Nevada corporation ("Midcoast"); Magnolia Resources, Inc., a Mississippi corporation ("Magnolia"); DPI/Midcoast, Inc., a Mississippi corporation ("DPI/Midcoast"); Dufour Petroleum, Inc., a Mississippi corporation ("DPI"); Curtis J. Dufour, III, and wife, Donna M. Dufour (collectively, the "DPI Shareholders"); James D. Laughlin, Michael E. Howell, Greg A. Haeusler, Greg L. Robbins, Deway Greene, Ronald R. Lubritz, and David I. Hirsch (collectively, the "Flare Minority Owners").

## W I T N E S S E T H :

WHEREAS, Dufour Petroleum, Inc. is taxed as a "C" corporation and all of its issued and outstanding shares of capital stock are owned fifty percent (50%) by Curtis Dufour, III and fifty percent (50%) by Donna M. Dufour; Dufour Petroleum, Inc. owns eighty percent (80%) of all of the issued and outstanding membership interests of Flare, L.L.C. ("Flare"), which is a Mississippi limited liability company taxed as a partnership; and the Flare Minority Owners collectively own the remaining twenty percent (20%) of all of the issued and outstanding membership interests of Flare, as follows: James D. Laughlin, five percent (5%); Michael E. Howell, three percent (3%); Greg A. Haeusler, two percent (2%); Greg L. Robbins, two and one-half percent (2.5%); Deway Greene, two and one-half percent (2.5%); Ronald R. Lubritz, two and one-half percent (2.5%); and David I. Hirsch, two and one-half percent (2.5%); and

WHEREAS, the DPI Shareholders desire to merge DPI with and into DPI/Midcoast, a wholly-owned subsidiary of Midcoast with DPI/Midcoast as the surviving corporation of the

2

respect to Tax matters pertinent to DPI and Flare relating to any taxable period beginning before the Effective Date until the expiration of the statute of limitations (and, to the extent notified by the DPI Shareholders or the Flare Minority Owners, any extensions thereof) of the respective taxable periods, and to abide by all record retention agreements entered into with any taxing authority, and (ii) give the DPI Shareholders and the Flare Minority Owners reasonable written notice prior to transferring, destroying or discarding any such books and records and, if they so request, shall allow them to take possession of such books and records.

(e) <u>Certain Taxes</u>. All transfer, documentary, sales, use, stamp, registration and other such Taxes and fees (including any penalties and interest) imposed by any state which are incurred in connection with this Agreement, shall be paid by the DPI Shareholders and the Flare Minority Owners, as applicable, when due, and they will, at their own expense, file all necessary Tax Returns and other documentation with respect to all such transfer, documentary, sales, use, stamp, registration and other Taxes and fees, and, if required by applicable law, they will, and will cause their Affiliates to, join in the execution of any such Tax Returns and other documentation.

11. <u>Prohibited Activities of the DPI Shareholders and Michael E. Howell</u>. In order to protect the goodwill and business interests of DPI and Flare following the Closing, the DPI Shareholders and Michael E. Howell covenant and agree that they will not:

(a) directly or indirectly, for a period of five (5) years from the Closing Date, request or advise any party to any contracts or commitments, now or hereafter existing, with DPI, Magnolia or Flare, or their repsective successors, to withdraw, curtail or cancel any service to or from such parties under the terms of such contract or commitment;

(b) for a period of five (5) years from the Closing Date, aid, abet or otherwise assist any person, firm or corporation seeking to interfere with DPI's and Flare's or their successors'relationship with the parties to, or the term of, any contract, now or hereafter existing, with it; or

(c) acting alone or in conjunction with others,

directly or indirectly, in Mississippi, Alabama, Louisiana, and Texas, for a period of five (5) years from the Closing Date, engage in any businesses in competition with the respective businesses presently conducted by DPI and Flare or their successors, whether for their own account or for others.

It is recognized that Curtis J. Dufour, III owns an interest in Maurice Gas Processing Co. (through DPI Gas Marketing and Gathering Co.) and El Mesquite Plant, LC, two (2) companies that own natural gas processing plants. Notwithstanding anything herein to the contrary, it is agreed that the covenants contained in Section 11(a), (b), and (c) shall not pertain to Curtis J. Dufour, III's ownership interest in Maurice Gas Processing Co. and El Mesquite Plant, LC and the business of those entities.

12. <u>Mediation and Arbitration</u>. The Parties acknowledge and agree that any dispute, controversy or claim of any kind or nature which may arise between the Parties, including any dispute, controversy or claim of any kind or nature which may arise between the Parties with respect to this Agreement or the transactions contemplated hereby (including any dispute, controversy or claim relating to the validity of this dispute resolution clause) shall be settled by alternative dispute resolution if said dispute cannot be settled through negotiation between the Parties. The Parties agree first to try in good faith to settle each dispute by mediation in Houston, Harris County, Texas. The mediation shall be conducted by a professional mediator who is a licensed attorney in the state of Texas, who is mutually agreeable to the Parties, and who is not affiliated, directly or indirectly, with any of the Parties. If the Parties are unable to agree on a mediator, then the mediator shall be selected under the rules of the American Arbitration Association. If mediation is unsuccessful at resolving the dispute between the Parties, the dispute shall be finally settled by binding arbitration as provided below.

The Parties acknowledge and agree that this Agreement and the performance of the transactions contemplated hereby evidence transactions contemplated hereby which involve a substantial nexus with interstate commerce. Accordingly, any dispute, controversy or claim of any kind or nature which may arise between the Parties (including any dispute, controversy or claim relating to the validity of this arbitration clause) with respect to this Agreement or the

55

only and shall not be construed to describe, define or limit the scope or intent of the provisions of this Agreement.

(q) <u>Entire Agreement</u>. This Agreement (including the documents referred to herein) constitutes the entire agreement among the Parties and supersedes any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they have related in any way to the subject matter hereof. There are no contemporaneous agreements, oral or written, by or among the Parties regarding the subject matter hereof.

(r) <u>Additional Documents</u>. The Parties to this Agreement shall cause to be delivered on the Closing Date, or at such other times and places as shall be agreed upon, such additional documents as a Party may reasonably require for the purpose of carrying out this Agreement. The Parties shall exert best efforts in coordinating such requests, and shall direct officers, directors, employees and representatives to furnish information, evidence, testimony, and other assistance in connection with resolution of any disputes arising from this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement in multiple counterpart originals as of the date first above written.

(Signature pages follow.)

"MIDCOAST":

MIDCOAST ENERGY RESOURCES, INC.

By: _Dan C. Tutcher_
    Dan C. Tutcher,
    President

"MAGNOLIA"
 MAGNOLIA RESOURCES, INC.

By: _Dan C. Tutcher_
    Dan C. Tutcher,
    President

"DPI/MIDCOAST"

DPI/MIDCOAST, INC.

By: _Dan C. Tutcher_
    Dan C. Tutcher,
    ~~President~~
    Chairman

"DPI":

DUFOUR PETROLEUM, INC.

By: _____
    Curtis J. Dufour, III,
    President

"DPI SHAREHOLDERS":

_____
CURTIS J. DUFOUR III

_____
DONNA M. DUFOUR

"FLARE MINORITY OWNERS:"

_____
JAMES DREW LAUGHLIN

_____
MICHAEL E. HOWELL

_____
GREG A. HAEUSLER

_____
GREG L. ROBBINS

_____
DEWAY GREENE

_____
RONALD L. LUBRITZ

_____
DAVID I. HIRSCH

1

## EMPLOYMENT AGREEMENT

This Employment Agreement, effective as of the 11th day of March 1999, (the "Effective Date"), is by and between DPI/Midcoast Inc. ("Employer" or "DPI/Midcoast") and Curtis J. Dufour, III ("Employee"). Employer and Employee are herein sometimes referred to individually as "Party" and jointly as the "Parties". Midcoast Energy Resources, Inc. ("Midcoast") joins herein for the limited purposes of agreeing to the provisions of Section 10 of this Agreement.

Section 1: Employment and Scope of Service.

A.     For and in consideration of the agreements set forth herein, Employer hereby employs Employee, and Employee hereby accepts employment from Employer as Chief Executive Officer of Employer. Employee hereby agrees to perform the services required of him in such capacity in good faith and with reasonable diligence, such duties being those reasonable and customary duties that are from time to time established, designated and communicated to Employee by the Board of Directors of Employer.

B.     Employer shall, at Employer's sole cost and expense, provide Employee at Employer's principal place of business in Petal, MS reasonable office space and facilities including an office, supplies, and reasonable secretarial and administrative assistance consistent with Employee's position.

Section 2: Place of Employment. Employee's duties under this Agreement shall be performed principally and primarily at Employer's place of business in Petal ,Mississippi , and incidentally and secondarily at such other place or places to which Employer, from time to time, may reasonably request Employee to travel (at Employer's sole cost and expense) in connection with Employee's duties hereunder.

Section 3: Time Devoted Business. Employee shall give best efforts and endeavors to the discharge of his duties and responsibilities hereunder. Employee shall devote his full business time and attention to Employer's business; provided, however, that Employee may devote reasonable amounts of time to personal, outside businesses that do not compete with Employer, charitable, and professional activities so long as such activities do not materially interfere with the performance of Employee's duties hereunder. Employee's business activities with Maurice Gas Processing Co. and El Mesquite Plant, LC are excepted from the application of this paragraph.

Section 4: Term of Employment. For purposes of this Agreement, Employee's term of employment shall commence on the Effective Date hereof and shall terminate on the third anniversary of such date ("Primary Term"), unless earlier terminated in accordance with Section 6 hereof.

Section 5: Compensation. In consideration of the services to be performed hereunder, Employer agrees to pay or cause to be paid to Employee, and Employee agrees to accept, the following:

A.     Base Salary. For all services rendered under this Agreement, beginning on the Effective Date, the Employer agrees to pay the Employee during the Employment Period an annual minimum salary ("Salary") in the amount of One Hundred Twenty-Five Thousand Dollars ($125,000) per year, payable in equal semi-monthly installments, or the equivalent amount payable on any other periodic basis consistent



with the Employer's payroll procedures. Employee's base salary shall increase each year in an amount commensurate with other Midcoast Energy Resources, Inc.'s (hereinafter "Midcoast") subsidiaries' employees' with responsibilities comparable to Employee's responsibilities, which is anticipated to be a minimum of five percent (5%). Employer shall make appropriate deductions from Employee's salary for customary withholding taxes and other employment taxes as required for salaried compensation under Federal, State and local tax laws. Employee's Salary shall be in addition to any bonuses (in cash or stock) that may be given from time to time at the discretion of Employer.

B.   Other Benefits.   Employee shall be entitled to vacation pay in accordance with Employer's written corporate policy which policy shall be identical to Midcoast's corporate policy. · In addition, Employee shall be entitled to such holidays and sick leave as well as other benefits, including fringe benefits, provided to employees of other Midcoast subsidiaries with responsibilities comparable to Employee's responsibilities and other benefits as may be agreed to by the Parties.

C.   Automobile.   Employer shall provide Employee with the use of an Employer owned automobile in connection with Employee's performance of his services for Employer under this Agreement.

D.   Miscellaneous Expenses.   Employer shall promptly reimburse Employee for all reasonable and necessary expenses incurred or paid by Employee incident to Employee's employment under this Agreement, including without limitation reasonable business entertainment and other reasonable and necessary expenses directly associated with Employee's responsibilities.

### Section 6:  Termination of Employment.

A.   Mutual Agreement.   Either Party may terminate this Agreement at any time when Employer and Employee shall mutually agree in writing.

B.   Default.   This Agreement may, at Employer's option, be terminated for Cause.  For purposes of this Agreement, Cause shall exist if (i) Employee defaults in the performance of his duties and fails to cure such default within ten (10) days after written notice thereof has been delivered to Employee, or (ii) Employee commits any act of fraud or malfeasance bearing on Employee's performance of his duties hereunder, or affecting the good name or reputation of the Employer or Midcoast or its subsidiaries.

C.   Disability.   This Agreement may likewise be terminated at Employer's option in the event Employee becomes Disabled. For the purposes this Agreement, "Disabled" shall mean an illness or injury that renders Employee unable to reasonably perform his essential functions for a continuous period of six (6) months or longer; provided, however, that Employer shall make reasonable and necessary accommodations to enable Employee to perform such functions. During any period of disability prior to termination of this Agreement, Employee shall be paid his regular compensation as defined herein above; and provided, further, that Employer's payments of such compensation shall be directly reduced by any amounts actually paid to Employee

2

pursuant to any disability insurance policy purchased by Employer.

D.   Death. This Agreement shall automatically terminate upon Employee's death.

E.   Payment of Compensation.  In the event this Agreement is terminated pursuant to Sections 6C. or 6D., the full amount of compensation remaining to be paid during the Primary Term of this Agreement shall be paid to Employee or to his surviving heirs, as determined at law or according to his Last Will and Testament, as applicable, in a lump sum discounted to reflect the current value of all future payments due hereunder at a discount rate of twelve percent (12%).

F.   Change of Control. This Agreement may be terminated at Employee's option upon a Change of Control of Midcoast.  As used herein and in Section 10 of the Agreement, "Change of Control" means (i) the sale of all or substantially all of the assets of Midcoast to any person (other than a wholly-owned subsidiary of Midcoast) or related group (as that term is used in Section 13(d)(3) of the Securities Exchange Act of 1934) of persons (other than a wholly-owned subsidiary of Midcoast) as an entirety or substantially as an entirety in one transaction or series of related transactions, or (ii) the first day on which a majority of the members of the board of directors of Midcoast are not continuing directors or (iii) the acquisition by any person or group or persons (other than a wholly-owned subsidiary of Midcoast) of more than fifty percent (50%) of the total voting power entitled to vote generally in the election of the directors of Midcoast, other than by a public offering or private placement of the shares, or (iv) the liquidation or dissolution of Midcoast. In the event Employee elects to terminate his employment under this provision, Employee shall receive a lump sum payment equal to fifty percent (50%) of Employee's then current annual salary upon written notice of such election, which notice must be provided within 30 days of Employee's knowledge of such Change of Control.

Section 7: Non-Disclosure of Confidential Information. During the continuation of his employment hereunder, and at all times thereafter, Employee shall keep with absolute secrecy and shall not reveal, disclose, or publish to any person or entity other than the President of Employer, or otherwise utilize (other than for the proper performance of Employee's duties) any information of confidential or secret nature (including, without limitation, all trade secrets, designs inventions, computer software or other electronic data, financial information, customer lists and business prospects) concerning the specific affairs of the Employer or any person or entity owned by or owning, whole or in part, the Employer ("Confidential Information"). Upon termination of Employee's full time employment with Employer, Employee shall surrender to Employer all papers, documents, writings, computer disks, electronic information and other property produced by him or coming into his possession by or through the rendering of his services to Employer and relating to the Confidential Information, and Employee agrees that all such materials shall at all times remain the property of Employer. The provisions of this Section shall survive any termination or expiration of the Agreement.

Section 8:  Solicitation of Customers.  Unless waived in writing by Employer, Employee further agrees that he will not, directly or indirectly, during the course of employment and for two (2) years thereafter contact either voluntarily or involuntarily, or for any reason whatsoever, solicit the trade or patronage of any of Employer's existing customers or prospective customers with whom Employer is negotiating, regardless of the location of such customers or prospective customers of the Employer

3

throughout the United States.

Section 9: <u>Covenant Not To Compete</u>.   For a period of two (2) years from the date of any termination of Employee's employment with the Employer, Employee shall not (i) accept employment with or render any services to or form an association with any business directly competitive with the Employer in the areas where it is doing business, nor engage in the marketing and transportation of liquified petroleum gases, including carbon dioxide, within the immediate georgraphic areas where employer is conducting such business and/or with the then existing customers with which such employer is doing business; and/or within the areas or with prospective customers that employee is involved in the evaluation of or the development of at the time of employee's termination, or (ii) employ or offer to employ, in a professional capacity in any business directly competitive with the Employer, in the areas where it is doing business, anyone who is or has been a director, officer, shareholder, or employee of the Employer. Employee acknowledges that the restrictions imposed by *this Agreement* are fully understood and will not preclude Employee from becoming gainfully employed following a termination of employment with the Employer.

Section 10: <u>Automatic Release of Covenants</u>.   Notwithstanding anything herein to the contrary, the provisions of paragraphs 8 and 9 hereof and the provisions of Section 11 of that certain "Agreement and Plan of Merger with respect to Dufour Petroleum, Inc and Purchase Agreement pertaining to remaining Flare LLC Membership Interests" dated March 11, 1999, as said provisions apply to Employee, shall be terminated and held for naught: (a) upon a Change of Control of Midcoast and Employee's involuntarily termination by Employer prior to the expiration of the Primary Term; or (b) Employer's material breach of this Agreement and its failure to remedy or cure such material breach within ten (10) days after written notice of such material breach has been delivered by Employee to Employer.

Section 11: <u>General Provisions</u>.

A.   Notices.  Any notice or other communications given or made under or pursuant to this Agreement shall be given in writing, shall be effective on receipt, and may be delivered to the relevant Party or sent by first class, postage prepaid, at the following address or such other address as any Party may hereafter designate by written notice:

<u>Employer</u>:
DPI/MIDCOAST, INC.
Attention: Chairman of the Board
1100 Louisiana, Suite 2950
Houston, TX 77002

<u>Employee</u>:
Curtis J. Dufour, III
100 W. Canebreak
Hattiesburg, Mississippi 39404

B.   Other Agreements.  This Agreement, constitutes the entire agreement of the Parties hereto, expressly superseding all prior understandings, commitments, and agreements other than those expressly referred to in this Agreement, whether written or oral between Employer or its subsidiaries or predecessors and Employee.

C.   Governing Law.  This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas. The Parties agree that the District Court of Harris County, Texas, or the United

4

States District Court of the Southern District of Texas, Houston Division, is the appropriate forum regarding any dispute relating to this Agreement.

D. No Waiver. The failure of either Party to insist in one or more instances on the performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of any right granted hereunder or of the future performance of any such term, covenant, or condition.

E. Severability. If any provision of this Agreement shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby.

F. Headings. Any headings or titles of sections or paragraphs are for convenience only and shall not limit nor amplify the provisions of this Agreement.

G. Binding Agreement. This Agreement shall inure to the benefit of and be binding on the undersigned Parties and their respective heirs, executors, successors, and assigns. Neither Party hereto may assign any or all of such Party's rights or obligations hereunder without prior written consent of the other Party hereto, except that Employer may assign to a subsidiary thereof without the consent of Employee.

IN WITNESS HEREOF, the Parties hereto have executed this Agreement, effective as of the Effective Date first set forth above.

EMPLOYER:
DPI/MIDCOAST, INC.

By: _____
Name: Dan C. Tutcher
Title: President/Chairman

EMPLOYEE:

_____
CURTIS A. DUFOUR, III

MIDCOAST ENERGY RESOURCES, INC.

By: _____
Dan C. Tutcher
President

5

## EMPLOYMENT AGREEMENT

This Employment Agreement, effective as of the 11th day of March 1999, (the "Effective Date"), is by and between DPI/Midcoast, Inc. ("Employer" or "Midcoast") and Mike Howell ("Employee"). Employer and Employee are herein sometimes referred to individually as "Party" and jointly as "Parties".

**Section 1: Employment and Scope of Service.**

    A.    For and in consideration of the agreements set forth herein, Employer hereby employs Employee, and Employee hereby accepts employment from Employer as President of Employer. Employee hereby agrees to perform the services required of him in such capacity in good faith and with reasonable diligence, such duties being those reasonable and customary duties that are from time to time established, designated and communicated to Employee by the Board of Directors of Employer.

    B.    Employer shall, at Employer's sole cost and expense, provide Employee at Employer's principal place of business reasonable office space and facilities including an office, supplies, and reasonable secretarial and administrative assistance consistent with Employee's position.

**Section 2: Place of Employment.** Employee's duties under this Agreement shall be performed principally and primarily at Employer's place of business in Petal, Mississippi, and incidentally and secondarily at such other place or places to which Employer, from time to time, may reasonably request Employee to travel (at Employer's sole cost and expense) in connection with Employee's duties hereunder.

**Section 3: Time Devoted Business.** Employee shall give best efforts and endeavors to the discharge of his duties and responsibilities hereunder. Employee shall devote his full business time and attention to Employer's business; provided, however, that Employee may devote reasonable amounts of time to personal, outside businesses that do not compete with Employer, charitable, and professional activities so long as such activities do not materially interfere with the performance of Employee's duties hereunder.

**Section 4: Term of Employment.** For purposes of this Agreement, Employee's term of employment shall commence on the Effective Date hereof and shall terminate on the third anniversary of such date ("Primary Term"), unless earlier terminated in accordance with Section 6 hereof.

**Section 5: Compensation.** In consideration of the services to be performed hereunder, Employer agrees to pay or cause to be paid to Employee, and Employee agrees to accept, the following:

    A.    Base Salary. For all services rendered under this Agreement, beginning on the Effective Date, the Employer agrees to pay the Employee during the Employment Period an annual minimum salary ("Salary") in the amount of Ninety Thousand Dollars ($90,000) per year, payable in equal semi-monthly installments, or the equivalent amount payable on any other periodic basis consistent with the Employer's payroll procedures (but no less frequently than monthly). Employee's base salary shall increase each year in an amount commensurate with other Midcoast Energy Resources, Inc.'s



(hereinafter "Midcoast") subsidiaries' employees' with responsibilities comparable to Employee's responsibilities, which is anticipated to be a minimum of five percent (5%). Employer shall make appropriate deductions from Employee's salary for customary withholding taxes and other employment taxes as required for salaried compensation under Federal, State and local tax laws. Employee's Salary shall be in addition to any bonuses (in cash or stock) that may be given from time to time at the discretion of Employer.

B.    Stock Options. Subject to this Agreement, Employee is granted the option to purchase Twelve Thousand Five Hundred shares of the Common Stock of Midcoast Energy Resources, Inc. for a period of 10 years from the Effective Date at an exercise price equal to the closing price of shares as listed on the American Stock Exchange on the Effective Date of this Agreement, vesting as follows:

| | |
|---|---|
| At the end of the 1st year: | 2,500 shares shall have vested; |
| At the end of the 2nd year: | an additional 2,500 shares shall have vested; |
| At the end of the 3rd year: | an additional 2,500 shares shall have vested; |
| At the end of the 4th year: | an additional 2,500 shares shall have vested; |
| At the end of the 5th year: | an additional 2,500 shares shall have vested; |

C.    Other Benefits. Employee shall be entitled to vacation pay in accordance with Employer's written corporate policy which policy shall be identical to Midcoast's corporate policy. In addition, Employee shall be entitled to such holidays and sick leave as well as other benefits, including fringe benefits, provided to employee of other Midcoast subsidiaries with responsibilities comparable to Employee's responsibilities and other benefits as may be agreed to by the Parties.

D.    Miscellaneous Expenses. Employer shall promptly reimburse Employee for all reasonable and necessary expenses incurred or paid by Employee incident to Employee's employment under this Agreement, including without limitation reasonable business entertainment, and other reasonable and necessary expenses directly associated with Employee's responsibilities.

## Section 6:  Termination of Employment.

A.    Mutual Agreement. Either Party may terminate this Agreement at any time when Employer and Employee shall mutually agree in writing.

B.    Default. This Agreement may, at Employer's option, be terminated for Cause. For purposes of this Agreement Cause shall exist if (i) Employee defaults in the performance of his duties and fails to cure such default within ten (10) days after written notice thereof has been delivered to Employee, or (ii) Employee commits any act of fraud or malfeasance bearing on Employee's performance of his duties hereunder, or affecting the good name or reputation of the Employer or Midcoast or its subsidiaries.

C.  **Disability.** This Agreement may likewise be terminated at Employer's option in the event Employee becomes Disabled. For the purposes this Agreement, "Disabled" shall mean an illness or injury that renders Employee unable to reasonably perform his essential functions for a continuous period of six (6) months or longer; provided, however, that Employer shall make reasonable and necessary accommodations to enable Employee to perform such functions. During any period of disability prior to termination of this Agreement, Employee shall be paid his regular compensation as defined herein above; and provided, further, that Employer's payments of such compensation shall be directly reduced by any amounts actually paid to Employee pursuant to any disability insurance policy purchased by Employer.

D.  **Death.** This Agreement shall automatically terminate upon Employee's death.

E.  **Payment of Compensation.** In the event this Agreement is terminated pursuant to Sections 6C., or 6D., the full amount of compensation remaining to be paid during the Primary Term of this Agreement shall be paid to Employee or to his surviving heirs, as determined at law or according to his Last Will and Testament, as applicable, in a lump sum discounted to reflect the current value of all future payments due hereunder at a discount rate of twelve percent (12%).

F.  This Agreement may be terminated at Employee's option upon a Change of Control of Midcoast. As used herein, "Change of Control" means (i) the sale of all or substantially all of the assets of Midcoast to any person (other than a wholly-owned subsidiary of Midcoast) or related group (as that term is used in Section 13(d)(3) of the Securities Exchange Act of 1934) of persons (other than a wholly-owned subsidiary of Midcoast) as an entirety or substantially as an entirety in one transaction or series of related transactions, (ii) the first day on which a majority of the members of the board of directors of Midcoast are not Continuing Directors (i.e., any member of the board of directors who is a member of the board of directors on the date hereof or who was nominated for election to the board of directors with the affirmative vote of 2/3 of the Continuing Directors who are members of the board of directors at the time of such nomination or election), (iii) the acquisition by any person or group or persons (other than a wholly-owned subsidiary of Midcoast) of more than fifty percent (50%) of the total voting power entitled to vote generally in the election of the directors of Midcoast, or (iv) the liquidation or dissolution of Midcoast. In the event Employee elects to terminate his employment under this provision, Employee shall receive a lump sum payment equal to fifty percent (50%) of Employee's then current annual salary upon written notice of such election, which notice must be provided within 30 days of Employee's knowledge of such Change of Control.

**Section 7: Non-Disclosure of Confidential Information.** During the continuation of his employment hereunder, and at all times thereafter, Employee shall keep with absolute secrecy and shall not reveal, disclose, or publish to any person or entity other than the President of Employer, or otherwise utilize (other than for the proper performance of Employee's duties) any information of confidential or secret nature (including, without limitation, all trade secrets, designs inventions, computer software or other electronic data, financial information, customer lists and business prospects) concerning the specific affairs of the Employer or any person or entity owned by or owning, whole or in part, the Employer ("Confidential Information"). Upon termination of Employee's full time employment with Employer, Employee shall surrender to Employer all papers, documents, writings, computer disks, electronic

3

information and other property produced by him or coming into his possession by or through the rendering of his services to Employer and relating to the Confidential Information, and Employee agrees that all such materials shall at all times remain the property of Employer. The provisions of this Section shall survive any termination or expiration of the Agreement.

**Section 8: Solicitation of Customers.**          Unless waived in writing by Employer, Employee further agrees that he will not, directly or indirectly, during the course of employment and for two (2) years thereafter contact either voluntarily or involuntarily, or for any reason whatsoever, solicit the trade or patronage of any of Employer's existing customers or prospective customers with whom Employer is negotiating, regardless of the location of such customers or prospective customers of the Employer throughout the United States.

**Section 9:  Covenant Not To Compete.**     For a period of two (2) years from the date of any termination of Employee's employment with the Employer, Employee shall not (i) accept employment with or render any services to or form an association with any business directly competitive with the Employer in the areas where it is doing business, or (ii) employ or offer to employ, in a professional capacity in any business directly competitive with the Employer, in the areas where it is doing business, anyone who is or has been a director, officer, shareholder, or employee of the Employer. Employee acknowledges that the restrictions imposed by this Agreement are fully understood and will not preclude Employee from becoming gainfully employed following a termination of employment with the Employer.

**Section 10: Automatic Release of Covenants.** Notwithstanding anything herein to the contrary, the provision of paragraphs 8 and 9 hereof and the provisions of Section 11 of that certain "Agreement and Plan of Merger with respect to Dufour Petroleum, Inc. and Purchase Agreement pertaining to remaining Flare LLC Membership Interests" dated March 11, 1999, as said provisions apply to Employee, shall be terminated and held for naught: (a) upon a Change of Control of Midcoast and Employee's involuntarily termination by Employer prior to the expiration of the Primary Term; or (b) Employer's material breach of this Agreement and its failure to remedy or cure such material breach within ten (10) days after written notice of such material breach has been delivered by Employee to Employer.

**Section 11:  General Provisions.**

    A.    Notices. Any notice or other communications given or made under or pursuant to this Agreement shall be given in writing, shall be effective on receipt, and may be delivered to the relevant Party or sent by first class, postage prepaid, at the following address or such other address as any Party may hereafter designate by written notice:

Employer:
DPI/Midcoast, Inc.
Attention:  Chairman of the Board
1100 Louisiana, Suite 2950
Houston, TX 77002

Employee:
Mike Howell
181 Wildwood Trail
Petal, Mississippi  39465

4

B. **Other Agreements.** This Agreement, constitutes the entire agreement of the Parties hereto, expressly superseding all prior understandings, commitments, and agreements other than those expressly referred to in this Agreement, whether written or oral between Employer or its subsidiaries or predecessors and Employee.

C. **Governing Law.** This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas. The Parties agree that the District Court of Harris County, Texas, or the United States District Court of the Southern District of Texas, Houston Division, is the appropriate forum regarding any dispute relating to this Agreement.

D. **No Waiver.** The failure of either Party to insist in one or more instances on the performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of any right granted hereunder or of the future performance of any such term, covenant, or condition.

E. **Severability.** If any provision of this Agreement shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby.

F. **Headings.** Any headings or titles of sections or paragraphs are for convenience only and shall not limit nor amplify the provisions of this Agreement.

G. **Binding Agreement.** This Agreement shall inure to the benefit of and be binding on the undersigned Parties and their respective heirs, executors, successors, and assigns. Neither Party hereto may assign any or all of such Party's rights or obligations hereunder without prior written consent of the other Party hereto, except that Employer may assign to a subsidiary thereof without the consent of Employee.

H. **Contingency.** The Stock Options granted pursuant to Section 5.B. are contingent upon Employer's Board of Directors' Compensation Committee approval.

IN WITNESS HEREOF, the Parties hereto have executed this Agreement, effective as of the Effective Date first set forth above.

**EMPLOYER:**
DPI/MIDCOAST, INC.

By: _____
Name: Dan C. Tutcher
Title: Chairman

**EMPLOYEE:**

_____
MIKE HOWELL

**ENBRIDGE**™

Enbridge Energy Company, Inc.
Legal Department
1100 Louisiana Street, Suite 3300
Houston, Texas  77002
(713)821-2000
Fax: (713)821-2229

RECEIVED

MAR 0 9 2012

BRYAN NELSON P.A.

March 7, 2012

Mr. Curtis J. Dufour, III
123 W. Canebrake Blvd.
Hattiesburg, MS  39402-8341

Dear Mr. Dufour:

I am writing in reference to your employment agreement with DPI/Midcoast, Inc.
("Midcoast") dated March 11, 1999 (the "Employment Agreement") which is now held by
Enbridge Energy Partners, L.P. ("Enbridge").  A copy of the Employment Agreement is
attached hereto for your reference.  Sections 8 and 9 of the Employment Agreement
concern non-compete and non-solicitation covenants.  Section 8 provides that during
your employment, and for two (2) years thereafter, you will not, directly or indirectly,
contact or solicit the trade of patronage of any of Employers existing or prospective
customers with whom Employer is negotiating.  Also, for a period of two (2) years
following your termination Section 9 of the Employment Agreement states the following:

> Employee shall not (i) accept employment with or render any services to
> or from an association with any business directly competitive with the
> Employer in the areas where it is doing business, or (ii) employ or offer to
> employ, in a professional capacity in any business directly competitive
> with the Employer, in the areas where it is doing business, anyone who is
> or has been a director, officer, shareholder, or employee of the Employer.
> . . .

I have information that you are in contact with and doing work for existing Enbridge
customers or competitors.  If this information is correct, this is in clear breach of the
Employment Agreement.  The obligation not to compete and not to solicit Enbridge's
customers continues even though you are no longer employed at Enbridge.

Enbridge hereby formally demands that you immediately cease all competition against
Enbridge and contact with Enbridge's customers and no longer solicit any current
Enbridge customers or any of Enbridge's prospective customers at the time of your
termination.  Enbridge also reminds you of your covenant not to compete.  Should you
not cease violations of your non-compete and non-solicitation covenants, Enbridge


EXHIBIT
4

intends to pursue all remedies available to it under law, including injunctive relief, monetary damages, and attorney's fees and costs.

Sincerely,

Chris Kaitson
Vice President – U.S. Law &
Deputy General Counsel

CK:lmk

## EMPLOYMENT AGREEMENT

This Employment Agreement, effective as of the 11th day of March 1999, (the "Effective Date"), is by and between DPI/Midcoast Inc. ("Employer" or "DPI/Midcoast") and Curtis J. Dufour, III ("Employee"). Employer and Employee are herein sometimes referred to individually as "Party" and jointly as the "Parties". Midcoast Energy Resources, Inc. ("Midcoast") joins herein for the limited purposes of agreeing to the provisions of Section 10 of this Agreement.

Section 1: Employment and Scope of Service.

A.   For and in consideration of the agreements set forth herein, Employer hereby employs Employee, and Employee hereby accepts employment from Employer as Chief Executive Officer of Employer. Employee hereby agrees to perform the services required of him in such capacity in good faith and with reasonable diligence, such duties being those reasonable and customary duties that are from time to time established, designated and communicated to Employee by the Board of Directors of Employer.

B.   Employer shall, at Employer's sole cost and expense, provide Employee at Employer's principal place of business in Petal, MS reasonable office space and facilities including an office, supplies, and reasonable secretarial and administrative assistance consistent with Employee's position.

Section 2: Place of Employment. Employee's duties under this Agreement shall be performed principally and primarily at Employer's place of business in Petal ,Mississippi , and incidentally and secondarily at such other place or places to which Employer, from time to time, may reasonably request Employee to travel (at Employer's sole cost and expense) in connection with Employee's duties hereunder.

Section 3: Time Devoted Business. Employee shall give best efforts and endeavors to the discharge of his duties and responsibilities hereunder. Employee shall devote his full business time and attention to Employer's business; provided, however, that Employee may devote reasonable amounts of time to personal, outside businesses that do not compete with Employer, charitable, and professional activities so long as such activities do not materially interfere with the performance of Employee's duties hereunder. Employee's business activities with Maurice Gas Processing Co. and El Mesquite Plant, LC are excepted from the application of this paragraph.

Section 4: Term of Employment. For purposes of this Agreement, Employee's term of employment shall commence on the Effective Date hereof and shall terminate on the third anniversary of such date ("Primary Term"), unless earlier terminated in accordance with Section 6 hereof.

Section 5: Compensation. In consideration of the services to be performed hereunder, Employer agrees to pay or cause to be paid to Employee, and Employee agrees to accept, the following:

A.   Base Salary. For all services rendered under this Agreement, beginning on the Effective Date, the Employer agrees to pay the Employee during the Employment Period an annual minimum salary ("Salary") in the amount of One Hundred Twenty-Five Thousand Dollars ($125,000) per year, payable in equal semi-monthly installments, or the equivalent amount payable on any other periodic basis consistent

with the Employer's payroll procedures. Employee's base salary shall increase each year in an amount commensurate with other Midcoast Energy Resources, Inc.'s (hereinafter "Midcoast") subsidiaries' employees' with responsibilities comparable to Employee's responsibilities, which is anticipated to be a minimum of five percent (5%). Employer shall make appropriate deductions from Employee's salary for customary withholding taxes and other employment taxes as required for salaried compensation under Federal, State and local tax laws. Employee's Salary shall be in addition to any bonuses (in cash or stock) that may be given from time to time at the discretion of Employer.

B.    Other Benefits.   Employee shall be entitled to vacation pay in accordance with Employer's written corporate policy which policy shall be identical to Midcoast's corporate policy.  · In addition, Employee shall be entitled to such holidays and sick leave as well as other benefits, including fringe benefits, provided to employees of other Midcoast subsidiaries with responsibilities comparable to Employee's responsibilities and other benefits as may be agreed to by the Parties.

C.    Automobile.   Employer shall provide Employee with the use of an Employer owned automobile in connection with Employee's performance of his services for Employer under this Agreement.

D.    Miscellaneous Expenses.   Employer shall promptly reimburse Employee for all reasonable and necessary expenses incurred or paid by Employee incident to Employee's employment under this Agreement, including without limitation reasonable business entertainment and other reasonable and necessary expenses directly associated with Employee's responsibilities.

## Section 6: Termination of Employment.

A.    Mutual Agreement.   Either Party may terminate this Agreement at any time when Employer and Employee shall mutually agree in writing.

B.    Default.   This Agreement may, at Employer's option, be terminated for Cause. For purposes of this Agreement, Cause shall exist if (i) Employee defaults in the performance of his duties and fails to cure such default within ten (10) days after written notice thereof has been delivered to Employee, or (ii) Employee commits any act of fraud or malfeasance bearing on Employee's performance of his duties hereunder, or affecting the good name or reputation of the Employer or Midcoast or its subsidiaries.

C.    Disability.   This Agreement may likewise be terminated at Employer's option in the event Employee becomes Disabled. For the purposes this Agreement, "Disabled" shall mean an illness or injury that renders Employee unable to reasonably perform his essential functions for a continuous period of six (6) months or longer; provided, however, that Employer shall make reasonable and necessary accommodations to enable Employee to perform such functions. During any period of disability prior to termination of this Agreement, Employee shall be paid his regular compensation as defined herein above; and provided, further, that Employer's payments of such compensation shall be directly reduced by any amounts actually paid to Employee

2

pursuant to any disability insurance policy purchased by Employer.

D.   Death. This Agreement shall automatically terminate upon Employee's death.

E.   Payment of Compensation. In the event this Agreement is terminated pursuant to Sections 6C. or 6D., the full amount of compensation remaining to be paid during the Primary Term of this Agreement shall be paid to Employee or to his surviving heirs, as determined at law or according to his Last Will and Testament, as applicable, in a lump sum discounted to reflect the current value of all future payments due hereunder at a discount rate of twelve percent (12%).

F.   Change of Control. This Agreement may be terminated at Employee's option upon a Change of Control of Midcoast. As used herein and in Section 10 of the Agreement, "Change of Control" means (i) the sale of all or substantially all of the assets of Midcoast to any person (other than a wholly-owned subsidiary of Midcoast) or related group (as that term is used in Section 13(d)(3) of the Securities Exchange Act of 1934) of persons (other than a wholly-owned subsidiary of Midcoast) as an entirely or substantially as an entirety in one transaction or series of related transactions, or (ii) the first day on which a majority of the members of the board of directors of Midcoast are not continuing directors or (iii) the acquisition by any person or group or persons (other than a wholly-owned subsidiary of Midcoast) of more than fifty percent (50%) of the total voting power entitled to vote generally in the election of the directors of Midcoast, other than by a public offering or private placement of the shares, or (iv) the liquidation or dissolution of Midcoast. In the event Employee elects to terminate his employment under this provision, Employee shall receive a lump sum payment equal to fifty percent (50%) of Employee's then current annual salary upon written notice of such election, which notice must be provided within 30 days of Employee's knowledge of such Change of Control.

Section 7: Non-Disclosure of Confidential Information. During the continuation of his employment hereunder, and at all times thereafter, Employee shall keep with absolute secrecy and shall not reveal, disclose, or publish to any person or entity other than the President of Employer, or otherwise utilize (other than for the proper performance of Employee's duties) any information of confidential or secret nature (including, without limitation, all trade secrets, designs inventions, computer software or other electronic data, financial information, customer lists and business prospects) concerning the specific affairs of the Employer or any person or entity owned by or owning, whole or in part, the Employer ("Confidential Information"). Upon termination of Employee's full time employment with Employer, Employee shall surrender to Employer all papers, documents, writings, computer disks, electronic information and other property produced by him or coming into his possession by or through the rendering of his services to Employer and relating to the Confidential Information, and Employee agrees that all such materials shall at all times remain the property of Employer. The provisions of this Section shall survive any termination or expiration of the Agreement.

Section 8: Solicitation of Customers. Unless waived in writing by Employer, Employee further agrees that he will not, directly or indirectly, during the course of employment and for two (2) years thereafter contact either voluntarily or involuntarily, or for any reason whatsoever, solicit the trade or patronage of any of Employer's existing customers or prospective customers with whom Employer is negotiating, regardless of the location of such customers or prospective customers of the Employer

3

throughout the United States.

**Section 9:  Covenant Not To Compete.**    For a period of two (2) years from the date of any termination of Employee's employment with the Employer, Employee shall not (i) accept employment with or render any services to or form an association with any business directly competitive with the Employer in the areas where it is doing business, nor engage in the marketing and transportation of liquified petroleum gases, including carbon dioxide, within the immediate georgraphic areas where employer is conducting such business and/or with the then existing customers with which such employer is doing business; and/or within the areas or with prospective customers that employee is involved in the evaluation of or the development of at the time of employee's termination, or (ii) employ or offer to employ, in a professional capacity in any business directly competitive with the Employer, in the areas where it is doing business, anyone who is or has been a director, officer, shareholder, or employee of the Employer.  Employee acknowledges that the restrictions imposed by this Agreement are fully understood and will not preclude Employee from becoming gainfully employed following a termination of employment with the Employer.

**Section 10:  Automatic Release of Covenants.**  Notwithstanding anything herein to the contrary, the provisions of paragraphs 8 and 9 hereof and the provisions of Section 11 of that certain "Agreement and Plan of Merger with respect to Dufour Petroleum, Inc and Purchase Agreement pertaining to remaining Flare LLC Membership Interests" dated March 11, 1999, as said provisions apply to Employee, shall be terminated and held for naught; (a) upon a Change of Control of Midcoast and Employee's involuntarily termination by Employer prior to the then expiration of the Primary Term; or (b) Employer's material breach of this Agreement and its failure to remedy or cure such material breach within ten (10) days after written notice of such material breach has been delivered by Employee to Employer.

**Section 11:  General Provisions.**

    A.    Notices.  Any notice or other communications given or made under or pursuant to this Agreement shall be given in writing, shall be effective on receipt, and may be delivered to the relevant Party or sent by first class, postage prepaid, at the following address or such other address as any Party may hereafter designate by written notice:

| Employer: | Employee: |
|---|---|
| DPI/MIDCOAST, INC. | Curtis J. Dufour, III |
| Attention: Chairman of the Board | 100 W. Canebreak |
| 1100 Louisiana, Suite 2950 | Hattiesburg, Mississippi 39404 |
| Houston, TX 77002 | |

    B.    Other Agreements.  This Agreement, constitutes the entire agreement of the Parties hereto, expressly superseding all prior understandings, commitments, and agreements other than those expressly referred to in this Agreement, whether written or oral between Employer or its subsidiaries or predecessors and Employee.

    C.    Governing Law. This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas.  The Parties agree that the District Court of Harris County, Texas, or the United

4

States District Court of the Southern District of Texas, Houston Division, is the appropriate forum regarding any dispute relating to this Agreement.

D.  No Waiver. The failure of either Party to insist in one or more instances on the performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of any right granted hereunder or of the future performance of any such term, covenant, or condition.

E.  Severability. If any provision of this Agreement shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby.

F.  Headings. Any headings or titles of sections or paragraphs are for convenience only and shall not limit nor amplify the provisions of this Agreement.

G.  Binding Agreement. This Agreement shall inure to the benefit of and be binding on the undersigned Parties and their respective heirs, executors, successors, and assigns. Neither Party hereto may assign any or all of such Party's rights or obligations hereunder without prior written consent of the other Party hereto, except that Employer may assign to a subsidiary thereof without the consent of Employee.

IN WITNESS HEREOF, the Parties hereto have executed this Agreement, effective as of the Effective Date first set forth above.

EMPLOYER:
DPI/MIDCOAST, INC.

By: _____
Name: Dan C. Tutcher
Title: President/Chairman

EMPLOYEE:

_____
CURTIS A. DUFOUR, III

MIDCOAST ENERGY RESOURCES, INC.

By: _____
Dan C. Tutcher
President

5



Enbridge Energy Company, Inc.
Legal Department
1100 Louisiana Street, Suite 3300
Houston, Texas 77002
(713)821-2000
Fax: (713)821-2229

March 7, 2012

Mr. Michael E. Howell
181 Wildwood Trail
Petal, MS 39465-2681

Dear Mr. Howell:

I am writing in reference to your employment agreement with DPI/Midcoast, Inc.
("Midcoast") dated March 11, 1999 (the "Employment Agreement") which is now held by
Enbridge Energy Partners, L.P. ("Enbridge"). A copy of the Employment Agreement is
attached hereto for your reference. Sections 8 and 9 of the Employment Agreement
concern non-compete and non-solicitation covenants. Section 8 provides that during
your employment, and for two (2) years thereafter, you will not, directly or indirectly,
contact or solicit the trade of patronage of any of Employers existing or prospective
customers with whom Employer is negotiating. Also, for a period of two (2) years
following your termination Section 9 of the Employment Agreement states the following:

> Employee shall not (i) accept employment with or render any services to
> or from an association with any business directly competitive with the
> Employer in the areas where it is doing business, or (ii) employ or offer to
> employ, in a professional capacity in any business directly competitive
> with the Employer, in the areas where it is doing business, anyone who is
> or has been a director, officer, shareholder, or employee of the Employer.
> . . .

I have information that you are in contact with and doing work for existing Enbridge
customers or competitors. If this information is correct, this is in clear breach of the
Employment Agreement. The obligation not to compete and not to solicit Enbridge's
customers continues even though you are no longer employed at Enbridge.

Enbridge hereby formally demands that you immediately cease all competition against
Enbridge and contact with Enbridge's customers and no longer solicit any current
Enbridge customers or any of Enbridge's prospective customers at the time of your
termination. Enbridge also reminds you of your covenant not to compete. Should you
not cease violations of your non-compete and non-solicitation covenants, Enbridge



intends to pursue all remedies available to it under law, including injunctive relief, monetary damages, and attorney's fees and costs.

Sincerely,

Chris Kaitson
Vice President – U.S. Law &
Deputy General Counsel

CK:lmk

# EMPLOYMENT AGREEMENT

This Employment Agreement, effective as of the 11th day of March 1999, (the "Effective Date"), is by and between DPI/Midcoast, Inc. ("Employer" or "Midcoast") and Mike Howell ("Employee"). Employer and Employee are herein sometimes referred to individually as "Party" and jointly as "Parties".

**Section 1:** <u>Employment and Scope of Service.</u>

    A.    For and in consideration of the agreements set forth herein, Employer hereby employs Employee, and Employee hereby accepts employment from Employer as President of Employer. Employee hereby agrees to perform the services required of him in such capacity in good faith and with reasonable diligence, such duties being those reasonable and customary duties that are from time to time established, designated and communicated to Employee by the Board of Directors of Employer.

    B.    Employer shall, at Employer's sole cost and expense, provide Employee at Employer's principal place of business reasonable office space and facilities including an office, supplies, and reasonable secretarial and administrative assistance consistent with Employee's position.

**Section 2:** <u>Place of Employment.</u>  Employee's duties under this Agreement shall be performed principally and primarily at Employer's place of business in Petal, Mississippi, and incidentally and secondarily at such other place or places to which Employer, from time to time, may reasonably request Employee to travel (at Employer's sole cost and expense) in connection with Employee's duties hereunder.

**Section 3:** <u>Time Devoted Business.</u>  Employee shall give best efforts and endeavors to the discharge of his duties and responsibilities hereunder. Employee shall devote his full business time and attention to Employer's business; provided, however, that Employee may devote reasonable amounts of time to personal, outside businesses that do not compete with Employer, charitable, and professional activities so long as such activities do not materially interfere with the performance of Employee's duties hereunder.

**Section 4:** <u>Term of Employment.</u>  For purposes of this Agreement, Employee's term of employment shall commence on the Effective Date hereof and shall terminate on the third anniversary of such date ("Primary Term"), unless earlier terminated in accordance with Section 6 hereof.

**Section 5:** <u>Compensation.</u>  In consideration of the services to be performed hereunder, Employer agrees to pay or cause to be paid to Employee, and Employee agrees to accept, the following:

    A.    Base Salary.  For all services rendered under this Agreement, beginning on the Effective Date, the Employer agrees to pay the Employee during the Employment Period an annual minimum salary ("Salary") in the amount of Ninety Thousand Dollars ($90,000) per year, payable in equal semi-monthly installments, or the equivalent amount payable on any other periodic basis consistent with the Employer's payroll procedures (but no less frequently than monthly). Employee's base salary shall increase each year in an amount commensurate with other Midcoast Energy Resources, Inc.'s

(hereinafter "Midcoast") subsidiaries' employees' with responsibilities comparable to Employee's responsibilities, which is anticipated to be a minimum of five percent (5%). Employer shall make appropriate deductions from Employee's salary for customary withholding taxes and other employment taxes as required for salaried compensation under Federal, State and local tax laws. Employee's Salary shall be in addition to any bonuses (in cash or stock) that may be given from time to time at the discretion of Employer.

B.   **Stock Options.**  Subject to this Agreement, Employee is granted the option to purchase Twelve Thousand Five Hundred shares of the Common Stock of Midcoast Energy Resources, Inc. for a period of 10 years from the Effective Date at an exercise price equal to the closing price of shares as listed on the American Stock Exchange on the Effective Date of this Agreement, vesting as follows:

| | |
|---|---|
| At the end of the 1st year: | 2,500 shares shall have vested; |
| At the end of the 2nd year: | an additional 2,500 shares shall have vested; |
| At the end of the 3rd year: | an additional 2,500 shares shall have vested; |
| At the end of the 4th year: | an additional 2,500 shares shall have vested; |
| At the end of the 5th year: | an additional 2,500 shares shall have vested; |

C.   **Other Benefits.**  Employee shall be entitled to vacation pay in accordance with Employer's written corporate policy which policy shall be identical to Midcoast's corporate policy. In addition, Employee shall be entitled to such holidays and sick leave as well as other benefits, including fringe benefits, provided to employee of other Midcoast subsidiaries with responsibilities comparable to Employee's responsibilities and other benefits as may be agreed to by the Parties.

D.   **Miscellaneous Expenses.**  Employer shall promptly reimburse Employee for all reasonable and necessary expenses incurred or paid by Employee incident to Employee's employment under this Agreement, including without limitation reasonable business entertainment, and other reasonable and necessary expenses directly associated with Employee's responsibilities.

## Section 6:  Termination of Employment.

A.   **Mutual Agreement.**  Either Party may terminate this Agreement at any time when Employer and Employee shall mutually agree in writing.

B.   **Default.**  This Agreement may, at Employer's option, be terminated for Cause. For purposes of this Agreement Cause shall exist if (i) Employee defaults in the performance of his duties and fails to cure such default within ten (10) days after written notice thereof has been delivered to Employee, or (ii) Employee commits any act of fraud or malfeasance bearing on Employee's performance of his duties hereunder, or affecting the good name or reputation of the Employer or Midcoast or its subsidiaries.

2

C.      **Disability.** This Agreement may likewise be terminated at Employer's option in the event Employee becomes Disabled. For the purposes this Agreement, "Disabled" shall mean an illness or injury that renders Employee unable to reasonably perform his essential functions for a continuous period of six (6) months or longer; provided, however, that Employer shall make reasonable and necessary accommodations to enable Employee to perform such functions. During any period of disability prior to termination of this Agreement, Employee shall be paid his regular compensation as defined herein above; and provided, further, that Employer's payments of such compensation shall be directly reduced by any amounts actually paid to Employee pursuant to any disability insurance policy purchased by Employer.

D.      **Death.** This Agreement shall automatically terminate upon Employee's death.

E.      **Payment of Compensation.** In the event this Agreement is terminated pursuant to Sections 6C., or 6D., the full amount of compensation remaining to be paid during the Primary Term of this Agreement shall be paid to Employee or to his surviving heirs, as determined at law or according to his Last Will and Testament, as applicable, in a lump sum discounted to reflect the current value of all future payments due hereunder at a discount rate of twelve percent (12%).

F.      This Agreement may be terminated at Employee's option upon a Change of Control of Midcoast. As used herein, "Change of Control" means (i) the sale of all or substantially all of the assets of Midcoast to any person (other than a wholly-owned subsidiary of Midcoast) or related group (as that term is used in Section 13(d)(3) of the Securities Exchange Act of 1934) of persons (other than a wholly-owned subsidiary of Midcoast) as an entirety or substantially as an entirety in one transaction or series of related transactions, (ii) the first day on which a majority of the members of the board of directors of Midcoast are not Continuing Directors (i.e., any member of the board of directors who is a member of the board of directors on the date hereof or who was nominated for election to the board of directors with the affirmative vote of 2/3 of the Continuing Directors who are members of the board of directors at the time of such nomination or election), (iii) the acquisition by any person or group or persons (other than a wholly-owned subsidiary of Midcoast) of more than fifty percent (50%) of the total voting power entitled to vote generally in the election of the directors of Midcoast, or (iv) the liquidation or dissolution of Midcoast. In the event Employee elects to terminate his employment under this provision, Employee shall receive a lump sum payment equal to fifty percent (50%) of Employee's then current annual salary upon written notice of such election, which notice must be provided within 30 days of Employee's knowledge of such Change of Control.

**Section 7:** <u>Non-Disclosure of Confidential Information</u>. During the continuation of his employment hereunder, and at all times thereafter, Employee shall keep with absolute secrecy and shall not reveal, disclose, or publish to any person or entity other than the President of Employer, or otherwise utilize (other than for the proper performance of Employee's duties) any information of confidential or secret nature (including, without limitation, all trade secrets, designs inventions, computer software or other electronic data, financial information, customer lists and business prospects) concerning the specific affairs of the Employer or any person or entity owned by or owning, whole or in part, the Employer ("Confidential Information"). Upon termination of Employee's full time employment with Employer, Employee shall surrender to Employer all papers, documents, writings, computer disks, electronic

information and other property produced by him or coming into his possession by or through the rendering of his services to Employer and relating to the Confidential Information, and Employee agrees that all such materials shall at all times remain the property of Employer.  The provisions of this Section shall survive any termination or expiration of the Agreement.

**Section 8:  Solicitation of Customers.**            Unless waived in writing by Employer, Employee further agrees that he will not, directly or indirectly, during the course of employment and for two (2) years thereafter contact either voluntarily or involuntarily, or for any reason whatsoever, solicit the trade or patronage of any of Employer's existing customers or prospective customers with whom Employer is negotiating, regardless of the location of such customers or prospective customers of the Employer throughout the United States.

**Section 9:  Covenant Not To Compete.**      For a period of two (2) years from the date of any termination of Employee's employment with the Employer, Employee shall not (i) accept employment with or render any services to or form an association with any business directly competitive with the Employer in the areas where it is doing business, or (ii) employ or offer to employ, in a professional capacity in any business directly competitive with the Employer, in the areas where it is doing business, anyone who is or has been a director, officer, shareholder, or employee of the Employer. Employee acknowledges that the restrictions imposed by this Agreement are fully understood and will not preclude Employee from becoming gainfully employed following a termination of employment with the Employer.

**Section 10: Automatic Release of Covenants.**  Notwithstanding anything herein to the contrary, the provision of paragraphs 8 and 9 hereof and the provisions of Section 11 of that certain "Agreement and Plan of Merger with respect to Dufour Petroleum, Inc. and Purchase Agreement pertaining to remaining Flare LLC Membership Interests" dated March 11, 1999, as said provisions apply to Employee, shall be terminated and held for naught:  (a) upon a Change of Control of Midcoast and Employee's involuntarily termination by Employer prior to the expiration of the Primary Term; or (b) Employer's material breach of this Agreement and its failure to remedy or cure such material breach within ten (10) days after written notice of such material breach has been delivered by Employee to Employer.

**Section 11:  General Provisions.**

A.       Notices.  Any notice or other communications given or made under or pursuant to this Agreement shall be given in writing, shall be effective on receipt, and may be delivered to the relevant Party or sent by first class, postage prepaid, at the following address or such other address as any Party may hereafter designate by written notice:

Employer:                                          Employee:
DPI/Midcoast, Inc.                              Mike Howell
Attention:  Chairman of the Board        181 Wildwood Trail
1100 Louisiana, Suite 2950                  Petal, Mississippi  39465
Houston, TX 77002

4

B.   Other Agreements.  This Agreement, constitutes the entire agreement of the Parties hereto, expressly superseding all prior understandings, commitments, and agreements other than those expressly referred to in this Agreement, whether written or oral between Employer or its subsidiaries or predecessors and Employee.

C.   Governing Law. This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas. The Parties agree that the District Court of Harris County, Texas, or the United States District Court of the Southern District of Texas, Houston Division, is the appropriate forum regarding any dispute relating to this Agreement.

D.   No Waiver. The failure of either Party to insist in one or more instances on the performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of any right granted hereunder or of the future performance of any such term, covenant, or condition.

E.   Severability.  If any provision of this Agreement shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby.

F.   Headings.  Any headings or titles of sections or paragraphs are for convenience only and shall not limit nor amplify the provisions of this Agreement.

G.   Binding Agreement. This Agreement shall inure to the benefit of and be binding on the undersigned Parties and their respective heirs, executors, successors, and assigns. Neither Party hereto may assign any or all of such Party's rights or obligations hereunder without prior written consent of the other Party hereto, except that Employer may assign to a subsidiary thereof without the consent of Employee.

H.   Contingency.  The Stock Options granted pursuant to Section 5.B. are contingent upon Employer's Board of Directors' Compensation Committee approval.

IN WITNESS HEREOF, the Parties hereto have executed this Agreement, effective as of the Effective Date first set forth above.

**EMPLOYER:**
**DPI/MIDCOAST, INC.**

**EMPLOYEE:**

By: _____
Name: _____
Title: _____
*ck96gx/067*

Mike Howell

5

B.  **Other Agreements.** This Agreement, constitutes the entire agreement of the Parties hereto, expressly superseding all prior understandings, commitments, and agreements other than those expressly referred to in this Agreement, whether written or oral between Employer or its subsidiaries or predecessors and Employee.

C.  **Governing Law.** This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas. The Parties agree that the District Court of Harris County, Texas, or the United States District Court of the Southern District of Texas, Houston Division, is the appropriate forum regarding any dispute relating to this Agreement.

D.  **No Waiver.** The failure of either Party to insist in one or more instances on the performance of any of the terms or conditions of this Agreement shall not be considered as a waiver or relinquishment of any right granted hereunder or of the future performance of any such term, covenant, or condition.

E.  **Severability.** If any provision of this Agreement shall be invalid or unenforceable to any extent, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby.

F.  **Headings.** Any headings or titles of sections or paragraphs are for convenience only and shall not limit nor amplify the provisions of this Agreement.

G.  **Binding Agreement.** This Agreement shall inure to the benefit of and be binding on the undersigned Parties and their respective heirs, executors, successors, and assigns. Neither Party hereto may assign any or all of such Party's rights or obligations hereunder without prior written consent of the other Party hereto, except that Employer may assign to a subsidiary thereof without the consent of Employee.

H.  **Contingency.** The Stock Options granted pursuant to Section S.B. are contingent upon Employer's Board of Directors' Compensation Committee approval.

IN WITNESS HEREOF, the Parties hereto have executed this Agreement, effective as of the Effective Date first set forth above.

**EMPLOYER:**
DPI/MIDCOAST, INC.

By: _Dan C. Tutcher_
Name: _Dan C. Tutcher_
Title: _Chairman_

**EMPLOYEE:**

_Mike Howell_
MIKE HOWELL



**IN THE CHANCERY COURT OF FORREST COUNTY, MISSISSIPPI**

CURTIS J. DUFOUR, III AND
MICHAEL E. HOWELL                                                **PLAINTIFFS**

VS.                                   CIVIL ACTION NO. ___12-0197-GN-DD___

ENBRIDGE ENERGY PARTNERS, L.P.                                   **DEFENDANT**

COPY

MAR 15 2012

Jimmy C. Howard
Chancery Clerk

## APPLICATION FOR FIAT

COME NOW, Plaintiffs, Curtis J. Dufour, III, and Michael E. Howell, and file this their

Application for Fiat and in support of same Plaintiffs will show unto the Court the following, to-wit:

I.

Contemporaneously submitted herewith, Plaintiffs have filed their verified Complaint for

Declaratory and Injunctive Relief and Motion for Temporary Restraining Order and Preliminary

Injunction. Plaintiffs pray for, among other relief, the entry of a Temporary Restraining Order and

Preliminary Injunction enjoining Defendants from engaging in further tortious conduct and other

relief as more particularly set forth in Plaintiffs' verified Complaint and Motion for Temporary

Restraining Order and Preliminary Injunction.

II.

The injunctive relief sought by Plaintiffs address actions of the Defendant which are

continuing and irreparably damaging to Plaintiffs and therefore justifies emergency injunctive relief.

III.

Plaintiffs pray that the Court set this matter down for immediate hearings on Plaintiffs'

request for a Temporary Restraining Order and further set this matter for evidentiary hearing within

ten (10) days of issuance of a Temporary Restraining Order at which time the issue of preliminary

injunctive relief may be heard and addressed by the Court.

244860.docx                                                      Page 1

IV.

Plaintiffs will cause to be issued Subpoenas *Duces Tecum* to be served on the above named Defendant requiring the production of certain documents and records. Plaintiffs request that the Court shorten the time requirements for production of documents provided by Rules 34 and 45 of the Mississippi Rules of the Civil Procedure and order the production of the requested documents on the day prior to the hearing on Plaintiffs' Motion for Preliminary Injunction.

WHEREFORE, Plaintiffs pray that their Motion for Temporary Restraining Order and Preliminary Injunction be set down for hearing, as soon as practical. A copy of Plaintiffs' Complaint for Declaratory and Injunctive Relief, Motion for Temporary Restraining Order and Preliminary Injunction, and this Application for Fiat will be served on Defendant, Enbridge Energy Partners, L.P., as soon as practical.

This the 15 day of March, 2012.

Respectfully submitted,

**CURTIS J. DUFOUR, III AND
MICHAEL E. HOWELL, PLAINTIFFS**

David M. Ott, MS Bar No. 3948
William A. Whitehead, Jr., MS Bar No. 10152

BRYAN NELSON P.A.
Post Office Drawer 18109
Hattiesburg, Mississippi 39404
T: (601) 261-4100
F: (601) 261-4106
Web: www.bnlawfirm.com

## IN THE CHANCERY COURT OF FORREST COUNTY, MISSISSIPPI

CURTIS J. DUFOUR, III AND
MICHAEL E. HOWELL                                   **PLAINTIFFS**

MAR 15 2012

VS.                             CIVIL ACTION NO. _12-0197-GN-DO_

ENBRIDGE ENERGY PARTNERS, L.P.              **DEFENDANT**

Jimmy C. Havd
Chancery Clerk

### FIAT

THIS MATTER came on before the Court on Plaintiffs' Application for Fiat. The Court

having considered the Plaintiffs' Application finds that Plaintiffs' Motion for Temporary

Restraining Order and Preliminary Injunction should be and is hereby set for hearing.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Plaintiffs' request for

a Temporary Restraining Order be and hereby is set for hearing before the Court on the _21st_ day of

_~~Febr~~ March_, 2012, at _9:00_ o'clock, _a_.m. at the _Forrest_ County Chancery Court

Building, _Hattiesburg, Forrest County_, Mississippi.

IT IS, FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs' request for

Preliminary Injunction and other relief be and hereby is set for an evidentiary hearing before the

Court on the _27th_ day of _March_, 2012, at _1:30_ o'clock, _p_.m. at the _Lamar_

County Chancery Court Building, _Purvis_, _Lamar County_, Mississippi.

IT IS, FURTHER, ORDERED, ADJUDGED AND DECREED, that Defendant shall

produce to the Plaintiffs for inspection and copying the documents requested in Plaintiffs'

Subpoenas *Duces Tecum* on the day prior to the above set evidentiary hearing on Plaintiffs' Motion

for Preliminary Injunction. The times as provided by the Mississippi Rules of Civil Procedure are

hereby shortened for good cause shown. Plaintiffs shall serve this Fiat with the Summons,

Complaint, Subpoena, and Plaintiffs' Motion for Temporary Restraining Order and Preliminary

Injunction on the Defendant prior to the date set for hearing on the Preliminary Injunction.

244862.docx                                                       Page 1

SO ORDERED, ADJUDGED AND DECREED this the _15th_ day of March, 2012, _4:04_ o'clock, _p_ .m.

_____
CHANCELLOR

Prepared by:

David M. Ott, MS Bar No. 3948
William A. Whitehead, Jr., MS Bar No. 10152
BRYAN NELSON P.A.
Post Office Drawer 18109
Hattiesburg, Mississippi 39404
T: (601) 261-4100
F: (601) 261-4106
Web: www.bnlawfirm.com

## IN THE CHANCERY COURT OF FORREST COUNTY, MISSISSIPPI

CURTIS J. DUFOUR, III AND
MICHAEL E. HOWELL                                                   **PLAINTIFFS**

VS.                                                          CIVIL ACTION NO. _12-0197-GN -DO_

ENBRIDGE ENERGY PARTNERS, L.P.                                      **DEFENDANT**

### SUBPOENA *DUCES TECUM*

TO:   Enbridge Energy Partners, L.P.
      c/o Registered Agent, The Corporate Trust Company
      Corporate Trust Center
      1209 Orange Street
      Wilmington, Delaware 19801

YOU ARE HEREBY COMMANDED to produce on or before the date set forth in the

Court's Fiat entered in this civil action, at the offices of William A. Whitehead, Jr., Esq. and David

M. Ott, Esq., BRYAN NELSON P.A., located at 6524 U.S. Highway 98, Post Office Drawer 18109,

Hattiesburg, Mississippi 39404-8109, telephone (601) 261-4100, the documents identified on the

attached Exhibit "A".

This Subpoena *Duces Tecum* requires the production of these documents and things only. It

does not require your appearance. The documents may be delivered by you in person or by UPS,

Federal Express or United States mail, postage prepaid, to arrive at the aforesaid location on or

before the date and time stated herein.

Herein fail not, under penalty prescribed by law and have then and there this Writ.

GIVEN under my hand and seal of said Court on this the ___15___ day of March, 2012.

FORREST COUNTY CHANCERY CLERK

BY: _____ ,D.C.

244900.docx                                                        Page 1

Prepared by:

David M. Ott, MS Bar No. 3948
William A. Whitehead, Jr., MS Bar No. 10152
BRYAN NELSON P.A.
Post Office Drawer 18109
Hattiesburg, Mississippi 39404
T: (601) 261-4100
F: (601) 261-4106
Web: www.bnlawfirm.com

## Exhibit "A"

Please produce true and correct copies of the following:

1. Any Employment Agreement executed by Curtis J. Dufour, III and/or Michael E. Howell;

2. Any Agreement which Enbridge Energy Partners, L.P., claims or alleges restricts Curtis J. Dufour, III's or Michael E. Howell's ability to accept employment with a competitor of Enbridge Energy Partners, L.P., or otherwise compete with Enbridge Energy Partners, L.P.;

3. Any document which Enbridge Energy Partners, L.P., claims or alleges confers to Enbridge Energy Partners, L.P., any right, interest or obligation concerning the Employment Agreement executed between DPI/Midcoast, Inc., and Curtis J. Dufour, III, and DPI/Midcoast, Inc., and Michael E. Howell;

4. Any document which Enbridge Energy Partners, L.P., claims, alleges or constitutes a renewal or extension of the Employment Agreement executed between DPI/Midcoast, Inc. and Michael E. Howell;

5. Any document which Enbridge Energy Partners, L.P., claims, alleges or constitutes a renewal or extension of the Employment Agreement executed between DPI/Midcoast, Inc. and Curtis J. Dufour, III;

6. Any document Enbridge Energy Partners, L.P., claims, alleges or constitutes a Written Consent of Assignment by Curtis J. Dufour, III, with regard to the Employment Agreement between DPI/Midcoast, Inc., and Curtis J. Dufour, III;

7. Any document Enbridge Energy Partners, L.P., claims, alleges or constitutes a Written Consent of Assignment by Michael E. Howell with regard to the Employment Agreement between DPI/Midcoast, Inc., and Michael E. Howell;

8. Any document which Enbridge Energy Partners, L.P., claims or alleges concerns, relate to or otherwise controls the employment relationship between Enbridge Energy Partners, L.P., and Curtis J. Dufour, III;

9. Any document which Enbridge Energy Partners, L.P., claims or alleges concerns, relate to or otherwise controls the employment relationship between Enbridge Energy Partners, L.P., and Michael E. Howell;

10. Any writings, agreements, modifications, letters, e-mails among any employees or officers of Defendant or any outside party, internal memos of Defendant or documents of any kind that mentions, refers to, relates to or bears on any right or claim that Defendant can restrict the business and employment of Curtis J. Dufour, III, or Michael E. Howell in any way after termination of their employment with Defendant.